# IN THE UNITED STATES DISTRICT COURT FOR
## NORTHERN DISTRICT OF GEORGIA

|  |  |
|---|---|
| JANE DOE, JANE DOE #2, JANE DOE # 3, and JOHN DOE, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WELLSTAR HEALTH SYSTEM, INC., <br><br> Defendant. | Docket No. 1:24-cv-01748-JPB |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Robert M. Brennan
Georgia Bar No. 079798
PARKER, HUDSON, RAINER &
DOBBS, LLP
303 Peachtree Street NE
Suite 3600
Atlanta, GA 30308
Phone: 404-523-5300
Fax: 404-522-8409
bbrennan@phrd.com

Scott S. Christie (*pro hac vice*)
New Jersey Bar No. 037901989
Matthew A. Sklar (*pro hac vice*)
New Jersey Bar No. 013662008
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07172
Phone: (973) 622-4444
Fax: (973) 624-7070
schristie@mccarter.com
msklar@mccarter.com

*Counsel for Defendant*
*Wellstar Health System, Inc.*

*Counsel for Defendant*
*Wellstar Health System, Inc.*

ME1 49597491v.1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................1

BACKGROUND ..........................................................................................................2

ARGUMENT ...............................................................................................................7

A.    MOTION TO DISMISS LEGAL STANDARD ..............................................7

B.    NONE OF PLAINTIFFS' CLAIMS ARE VIABLE ......................................8

    1.    Plaintiffs' Claim Under the Electronic Communications Privacy Act is Legally Deficient ..........................................................................8

        a.    Plaintiffs Fail to Allege any Unlawful Interception or that the Contents of any Communications were Disclosed or Improperly Used ...........................................................................9

        b.    The Tortious or Criminal Act Exception is Inapplicable..........12

    2.    Plaintiffs have Failed to State a Claim for Invasion of Privacy..........15

    3.    Plaintiffs have Failed to State a Claim for Breach of Fiduciary Duty ............................................................................................................18

    4.    Plaintiffs have Failed to State a Claim for Negligence.......................21

    5.    Plaintiffs have Failed to State a Claim for Negligence Per Se ...........23

    6.    Plaintiffs have Failed to State Claims for Breach of Either an Implied or an Express Contract.......................................................25

    7.    Plaintiffs Have Failed to State a Claim for Unjust Enrichment..........30

CONCLUSION.............................................................................................................31

ME1 49597491v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Novant Health, Inc.*,
  Case No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ...........16

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
  Case No. CV 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021)..........25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................7

*Austin v. Atlina*,
  Case No. 20-CV-6363-YGR, 2021 WL 6200679 (N.D. Cal. Dec. 22,
  2021) .........................................................................................................................22

*BDI Laguna Holdings, Inc. v. Marsh*,
  301 Ga. App. 656 (2009) ..................................................................... 24-26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................7, 20

*Benedict v. State Farm Bank, FSB*,
  309 Ga. App. 133, 709 S.E.2d 314 (2011) .......................................................15

*Boadi v. JPMorgan Chase Bank*,
  Case No. 1:20-CV-4771, 2021 WL 2451746 (N.D. Ga. Feb. 24,
  2021) .........................................................................................7, 15, 16, 20

*Brooks v. Branch Banking & Tr. Co.*,
  107 F. Supp. 3d 1290 (N.D. Ga. 2015)........................................... 24, 25, 27-29

*Caro v. Weintraub*,
  618 F.3d 94 (2d Cir. 2010) ...............................................................................13

*Carter v. Midland Credit Mgmt., Inc.*,
  Case No. 10-CV-04103, 2011 WL 13318675 (N.D. Ga. Mar. 25, 2011) ..........14

*Cox v. Athens Reg'l Med. Ctr., Inc.*,
  279 Ga. App. 586, 631 S.E.2d 792 (2006) .......................................................18

i

ME1 49597491v.1

*Curry v. TD Ameritrade, Inc.*,
Case No. 1:14-CV-1361-LMM, 2015 WL 11251449 (N.D. Ga. June 30, 2015) ........................................................................................................18

*Davidson v. Maraj*,
609 F. App'x 994 (11th Cir. 2015).............................................................28

*Eiber Radiology, Inc. v. Toshiba Am. Med. Sys.*, 673 Fed. Appx. 925 (11th Cir. 2016) ....................................................................................31

*Everhart v. Colonial Pipeline Co.*,
Case No. 1:21-CV-3559-MHC, 2022 WL 3699967 (N.D. Ga. Jul. 22, 2022) ..........................................................................................19

*F.T.C. v. Sperry & Hutchinson Co.*,
405 U.S. 233 ......................................................................................24

*Gaucher v. U.S. Bank*,
Case No. 1:12-CV-00591-WSD, 2012 WL 13013640 (N.D. Ga. Oct. 29, 2012) ..........................................................................................26

*Gen. Elec. Co. v. Lowe's Home Centers, Inc.*,
279 Ga. 77, 608 S.E.2d 636 (2005) ......................................................21

*Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*,
522 F. Supp. 3d 1279 (N.D. Ga. 2021), *aff'd*, Case No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) ......................................7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................................................9, 12, 13

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014).......................................................16

*Grange Mut. Cas. Co. v. Woodard*,
300 Ga. 848, 797 S.E.2d 814 (2017) ......................................................25

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022).......................................................11

*Horton v. HSBC Bank*,
Case No. 1:11-CV-3210-TWT, 2013 WL 2452273 (N.D. Ga. June 5, 2013) ...23

ME1 49597491v.1

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)................................................................16

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)................................................................14

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)...........................................................10, 16

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)................................................................15

*Laster v. CareConnect Health Inc.*,
852 F. App'x 476 (11th Cir. 2021)....................................................................23

*In re Netgain Tech., LLC*,
Case No. 21-CV-1210, 2022 WL 1810606 (D. Minn. June 2, 2022) ...............23

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ..........................................................................8, 9

*In re Nickelodeon Consumer Priv. Litig.*,
Case No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2,
2014) ................................................................................................................29

*Nienaber v. Overlake Hosp. Med. Ctr.*,
Case No. 2:23-cv-01159-TL, 2024 WL 2133709 (W.D. Wash. May
13, 2024) ..........................................................................................................16

*O'Neill v. Khuzami*,
Case No. 20-CV-04632, 2022 WL 704696 (N.D. Ga. Mar. 9, 2022) ................8

*Okash v. Essentia Health*,
Case. No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024)......................16

*Prime Mgmt. Consulting & Inv. Servs., LLC v. Certain Underwriters at
Lloyd's London*, Case No. 1:07-CV-1578-WSD, 2007 WL 4592099
(N.D. Ga. Dec. 28, 2007)..................................................................................18

*Provost v. Aptos, Inc.*,
Case No. 1:17-CV-02120-ELR, 2018 WL 1465766 (N.D. Ga. Mar.
12, 2018) ..........................................................................................................19

iii

*Scoggins v. Floyd Healthcare Mgmt. Inc.*,
   Case No. 14-CV-00274, 2016 WL 11544908 (N.D. Ga. Aug. 30,
   2016) ....................................................................................................23

*Shofner v. CitiMortgage, Inc.*,
   Case No. 11-CV-0254, 2011 WL 13229645 (N.D. Ga. Dec. 12, 2011) ............27

*Smith v. United States*,
   873 F.3d 1348 (11th Cir. 2017) ......................................................................20

*Steinberg v. CVS Caremark Corp.*,
   899 F. Supp. 2d 331 (E.D. Pa. 2012)...............................................................16

*Sussman v. Am. Broad. Companies, Inc.*,
   186 F.3d 1200 (9th Cir. 1999) ........................................................................13

*T.D. v. Piedmont Healthcare, Inc.*, Case No. 1:23-CV-5416-TWT, 2024
   WL 3972984 (N.D. Ga. Aug. 28, 2024)......................................................*passim*

*Vavro v. ARC Grp. Worldwide Inc.*,
   Case No. 1:18-CV-0500-CAP, 2018 WL 7077155 (N.D. Ga. June
   20, 2018) ...............................................................................................17

*Williford v. Bayview Loan Servicing, LLC*,
   Case No. 1:16-CV-4268-ELR-LTW, 2017 WL 11151639 (N.D. Ga.
   July 14, 2017)..............................................................................22, 24

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ........................................................................11

**Statutes**

18 U.S.C. § 2510(8) .....................................................................................10

18 U.S.C. § 2511(1) .......................................................................................8

18 U.S.C. § 2511(2)(d)...................................................................................9, 12

Electronic Communications Privacy Act................................................6, 8, 14, 30

FTC Act Section 5, 15 U.S.C. § 45........................................................ 22-24, 30

Health Insurance Portability and Accountability Act...........................22, 23, 25, 30

ME1 49597491v.1

v

O.C.G.A. § 13-3-1...................................................................................................24

O.C.G.A. § 23-2-58...............................................................................................17

O.C.G.A § 51-1-6...................................................................................................23

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)...................................................................7

Restatement (Second) of Torts, § 652D, comment a. (1977)...................................17

## **INTRODUCTION**

Unable to overcome a motion to dismiss the original complaint, pseudonymous Plaintiff Jane Doe amended the complaint to include an additional 94 paragraphs and three additional pseudonymous named Plaintiffs – Jane Doe # 2, Jane Doe # 3, and John Doe (collectively, "Plaintiffs"). But the amendments do not cure the deficiencies; they only serve to exacerbate the problem. Plaintiffs' amended complaint is now a 146-page tome replete with conclusory assertions, unsupported conjecture, and outright hyperbole. However, there is nothing in the amended complaint that supports moving forward with this case.

Plaintiffs raise sweeping and speculative allegations, individually and on behalf of a purported class, against Defendant Wellstar Health System, Inc. ("Wellstar") that purport to arise from Wellstar's use of online tracking and data collection tools from Google and Meta, including the Meta Pixel. They claim that personal information of users of Wellstar's public website and patient portal is gathered and transmitted without authorization to Google or Meta as a result of the installation of these tracking tools on the website and portal. Plaintiffs craft a litany of legal claims that all arise from this fundamental contention: interception of wire communications, invasion of privacy, breach of fiduciary duty, negligence, negligence per se, breach of implied and express contract, and unjust enrichment.

But when the bombast and bluster is stripped away, a different reality emerges. Plaintiffs' wiretapping claims cannot be sustained because, among other reasons, Wellstar did not intercept any communications given that it was a party to these communications. The remaining claims likewise are deficient either as a matter of law or due to a failure to allege facts supporting each element of the claim. When these allegations are distilled down to their essence, nothing of substance remains. The Court should dismiss all of the claims in the amended complaint with prejudice.

## BACKGROUND

On April 23, 2024, Jane Doe pseudonymously filed a purported class action complaint conclusorily alleging that Wellstar's public website and patient portal used online tracking and collection tools of Meta Platforms, Inc. – also known as "Meta" or Facebook" – in a manner that supposedly disclosed confidential health information in violation of federal and state laws. (*See* Dkt. No. 1 at 1, ¶ 2). Given the glaring deficiencies in this initial complaint, Wellstar, in turn, filed a motion to dismiss. (*See generally* Dkt. No. 17).

In an attempt to forestall dismissal, Jane Doe amended her complaint on August 2, 2024. (Dkt. No. 20). The amended complaint now identifies a total of four named Plaintiffs, all of whom have assumed pseudonyms: the original Jane Doe, plus Jane Doe # 2, Jane Doe # 3, and John Doe. (*Id*. at 1). All Plaintiffs are alleged

2

to be residents of Georgia who used Wellstar's website and patient portal through which they purportedly disclosed private information to Wellstar. (*Id.* at ¶¶ 32-35, 290-92, 308-10, 326-28, 343-345). Their allegations principally arise from the supposed installation of "Google and Meta Collection Tools" on Wellstar's public website and MyChart Patient Portal, which Plaintiffs collectively define as the "Web Properties." (*Id.* at ¶ 2). Plaintiffs do not clearly identify the "Meta Collection Tools" and "Google Collection Tools," but they allegedly include various Meta tools (such as the Meta Pixel) and Google Tools (such as Google Analytics) while also purportedly encompassing "similar collection tools." (*Id*. at 2 n.2).

Plaintiffs contend that the installation of these online tracking tools have resulted in the "shar[ing] [of] patients' confidential information including personally identifiable information ('PII') and protected health information ('PHI'), collectively ('Private Information'), with Meta, Google, and other unauthorized third parties in violation of federal and state laws." (*Id*. at ¶ 2). Plaintiffs claim that Wellstar engaged in such tactics for "marketing, re-marketing and analytics" purposes without consent. (*See id.* at ¶¶ 3-4, 9).

Plaintiffs further speculate that:

> [a]s a result of Wellstar's conduct, when patients used the Web Properties, their communications were duplicated and transmitted to Facebook and Google's servers, including when they: (1) signed-up for the Patient Portal;

3

(2) logged in or out of the Patient Portal; (3) took actions within the Patient Portal; (4) made, scheduled, or participated in appointments; (5) exchanged communications relating to doctors, treatments, payment information, health insurance information, prescription drugs, prescription side effects, conditions, diagnoses, prognoses, or symptoms of health conditions; (6) conducted a search; and more.

(*Id.* at ¶ 12). They assert that the supposed information that Google and Meta received through Wellstar's website and patient portal actually identified patients, as well as their medical information and care. (*See id.* at ¶ 13). Plaintiffs then conjecture that when an individual used the Wellstar website or patient portal, Wellstar disclosed that user's "Facebook ID" to Facebook and others, which purportedly "allows Facebook and other third parties to personally identify that User and associates the Users' Private Information with its Facebook profile." (*Id.* at ¶ 14). Plaintiffs conclusorily speculate that through the purported disclosure of this type of information in this manner, the recipient can "infer" the medical condition of a user of the Wellstar website or patient portal, (s*ee id.* at ¶ 15), facilitating advertising to the user targeted to this surmised medical condition. (*See id.* at ¶¶ 16-17).

With respect to the pseudonymous Plaintiffs, the actual factual allegations are just as vague and imprecise. Jane Doe, for example, asserts that from "at least May 2013 to present," she "accessed mychart.wellstar.org and Defendant's Website on

4

her mobile device and/or computer to receive healthcare services from Defendant and at Defendant's direction." (*Id.* at ¶ 291). She also claims that she used "Defendant's Web Properties, including Wellstar's MyChart, multiple times per year to, among other things, make appointments with doctors, exchange messages with her doctors, fill out questionnaires requested by her doctors, request referrals for specific health issues, refill prescriptions, update medication information, and check medical test results." (*Id.* at ¶ 292). Jane Doe also contends that she "has been diagnosed with chronic conditions, such as high blood pressure and high cholesterol," and has "submitted information to Defendant's Web Properties about each of these medical conditions." (*Id.* at ¶ 293). Additionally, she alleges that she has used Defendant's Web Properties to communicate with her physician and care team regarding acute conditions, check test results, and receive and review referrals. (*See id.* at ¶¶ 294-96). Jane Doe claims that she has maintained a Facebook account during this period, and conjectures, therefore, that her online communications with Wellstar must have been intercepted, and her "Facebook ID, computer IP address, and information relating to her medical conditions, including test results" transmitted to Meta. (*See id.* at ¶¶ 297, 301-03). Jane Doe only specifically identifies Meta as a third party that supposedly received her private information without authorization.

5

The remaining named Plaintiffs – Jane Doe # 2, Jane Doe # 3, and John Doe – make similar allegations. Each claim that he or she accessed Wellstar's website and MyChart site on their mobile devices or phones to receive healthcare services. (*See id.* at ¶¶ 309, 327, 344). Each also contend that he or she used Wellstar's sites "multiple times per year" in connection with their efforts to seek healthcare services. (*See id.* at ¶¶ 310, 328, 345). Like Jane Doe, each further claim to have submitted information through Wellstar's website and patient portal regarding their medical conditions. (*See id.* at ¶¶ 311, 329, 346).

Jane Doe #2 and Jane Doe # 3 each also claim that she used Wellstar's website and patient portal for communication purposes, to obtain referrals, and check test results, while John Doe vaguely alleges that he used Wellstar's website to submit information about his medical conditions, pay for medical services, and find doctors. (*See id.* at ¶¶ 310-314, 328-331, 345-346). But all of the three newly-named plaintiffs assert that they maintained a Facebook account, and thus assume that their communications with Wellstar were transmitted to Meta as a result. (*See id.* at 315, 320, 332, 337, 347, 352). And corresponding to Jane Doe's allegation, Jane Doe # 2, Jane Doe # 3, and John Doe each specifically identify only Meta as a third party that supposedly received their private information without authorization.

6

Plaintiffs purport to bring this action individually and on behalf of a putative class alleging (a) invasion of privacy-intrusion upon seclusion; (b) breach of fiduciary duty; (c) negligence; (d) negligence per se; (e) breach of implied contract; (f) breach of express contract; (g) unjust enrichment; and (h) violations of the Electronic Communications Privacy Act ("ECPA").  (*See id.* at ¶¶ 31, 383-496). None of Plaintiffs' claims are legally or factually viable, and this case should be dismissed in its entirety with prejudice.

**ARGUMENT**

**A.    Motion to Dismiss Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co*., 522 F. Supp. 3d 1279, 1283 (N.D. Ga. 2021), *aff'd*, Case No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) (marks omitted).  But Plaintiffs must provide the factual basis for their relief, which "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, Plaintiffs "must "plead[ ] factual content that allows the court to draw the reasonable inference that the

7

defendant is liable for the misconduct alleged.'" *Gilreath*, 522 F. Supp. 3d at 1283–84. And "courts should disregard any allegations that are mere legal conclusions" when evaluating the sufficiency of a complaint. *See Boadi v. JPMorgan Chase Bank*, Case No. 1:20-CV-4771, 2021 WL 2451746, at *3 (N.D. Ga. Feb. 24, 2021), *report and recommendation adopted*, 2021 WL 2451547 (N.D. Ga. Apr. 26, 2021). Plaintiffs fail to present a single cause of action that passes this threshold.

**B.      None of Plaintiffs' Claims Are Viable**

**1.      Plaintiffs' Claim Under the Electronic Communications Privacy Act is Legally Deficient**

The portion of the ECPA at issue, which is often referred to as the Wiretap Act, allows for a civil action for the unlawful interception of certain electronic or oral communications, or the disclosure or use of certain intercepted communications. *See* 18 U.S.C. § 2511(1); *see O'Neill v. Khuzami*, Case No. 20-CV-04632, 2022 WL 704696, at *2 (N.D. Ga. Mar. 9, 2022). But notwithstanding the availability of a civil action under the Act, Plaintiffs fail to state a corresponding claim here.

"A plaintiff pleads a prima facie case under the Wiretap Act by showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (citation and marks omitted).

ME1 49597491v.1

Plaintiffs' claims are predicated upon the supposed interception of "electronic communications that Plaintiffs and Class Members exchanged with Wellstar through the Google and Meta Collection Tools installed on Wellstar's Web Properties" (Dkt. No. 20 at ¶¶ 473-74), the transmission of the content of communications to Google and Meta (*id.* at ¶¶ 476, 480-81), and the disclosure of the contents of communications (*id.* at ¶ 485). However, none of this alleged conduct supports a civil Wiretap Act claim against Wellstar.

Despite their lengthy and largely conclusory pleading, none of the Plaintiffs have alleged any facts that even suggest Wellstar engaged in an unlawful interception or that contents of an intercepted communication were improperly disclosed or used by Wellstar. These deficiencies, by themselves, are fatal to Plaintiffs' wiretapping claims, and are not excused by the Act's exception for tortious or criminal conduct.

        a.      **Plaintiffs Fail to Allege any Unlawful Interception or that the Contents of any Communications were Disclosed or Improperly Used**

Notably, the Wiretap Act allows for one-party consent, meaning that any participant in the communication at issue can lawfully record that communication. *See* 18 U.S.C. § 2511(2)(d) (it is not unlawful to "to intercept a wire, oral, or electronic communication where such person is a party to the communication"). In

9

other words, a party cannot intercept its own communications with another party or communications directed to that party from another party subject to certain exceptions not applicable here. *Id.* Claims under the Wiretap Act alleged against a party under such circumstances are, therefore, not viable as a matter of law. *See In re Nickelodeon*, 827 F.3d at 275 (wiretapping claim based on communication through computers was rejected in view of one-party consent); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015) (same).

Plaintiffs base their Wiretap Act claims on communications that "Plaintiffs and Class Members *exchanged* with Wellstar." (Dkt. No. 20 at ¶ 473 (emphasis added)). That, by itself, justifies the dismissal of Plaintiffs' Wiretap Act claim in its entirety as they concede that Wellstar is a party to the communications at issue. *See Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 937 (N.D. Ill. 2023) (dismissing wiretapping claim brought against healthcare provider because it was a party to communications that were allegedly intercepted).

Separately and independently, Plaintiffs' claims are inadequate because they do not sufficiently specify that the "contents" of any alleged communications with Wellstar were disclosed to third parties in violation of the Wiretap Act. The "contents" of a communication is defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

10

Plaintiffs' allegations concerning the contents of purportedly-intercepted communications instead largely consist of non-substantive interactions with a website, such as actions meant to access the site itself, and URLs (*i.e.*, webpage addresses). (*See* Dkt. No. 20 at ¶ 476). Indeed, the named Plaintiffs fail to claim that any specific content whatsoever was disclosed to Google despite the addition of voluminous references to Google tracking tools in the amended complaint.

For the purposes of the Wiretap Act, "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Information beyond that intended message – including personally identifiable information about a party – are not the "contents" of a communication. *See id*. at 1107. Moreover even if a third party arguably could deduce some information about a user through disclosure of the sites or pages they visited – like Plaintiffs allege occurred here (Dkt. No. 20 at ¶ 477) – that is not akin to the disclosure of the "contents" of a communication. *See In re Zynga Priv. Litig.*, 750 F.3d at 1108 (rejecting contention that disclosing a user viewed a "Facebook page of a gay support group" would be akin to the disclosure of the contents of a communication); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022)

11

("information about personal habits and identities that Google 'infers' from the types of apps a user uses is not 'contents' of a communication").

In a misguided attempt to satisfy the definitional limits of "contents" of a communication, Plaintiffs generally assert that Wellstar intercepted and disclosed a variety of information that they claim to be "contents" of communications beyond website button clicks, login and logout times, various website interactions, and URLs. (*See* Dkt. No. 20 at ¶ 476). But such unspecific information relating to a party and personally identifying information are not equivalent to communication "contents." And the remaining information that Plaintiffs claim has been intercepted – including information that was supposedly intercepted "upon information and belief" – is not described with the necessary particularity or is presented in a conclusory manner as part of an attempt to circumvent dismissal. (*See id.*). Plaintiffs' failure to plead "contents" with requisite factual detail is fatal to their Wiretap Act claims. Accordingly, Plaintiffs have failed to properly assert that "contents" of communications have been intercepted in an impermissible manner even despite the fact that Wellstar cannot have intercepted communications to which it was a party.

### b.    The Tortious or Criminal Act Exception is Inapplicable

Plaintiffs further seek to avoid the conclusion that Wellstar cannot intercept communications to which it was a party under the Wiretap Act by claiming that

Wellstar has engaged in tortious or criminal conduct.  (*See* Dkt. No. 20 at ¶¶ 485-491).  But Plaintiffs miss the mark completely with this argument.

The tortious or criminal exception to the one-party consent rule applies when "such communication is intercepted or used for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act."  18 U.S.C. § 2511(2)(d).  However, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *In re Google*, 806 F.3d at 145 (citation omitted).  In other words, the wrongful act underlying the exception cannot be the act of interception itself.  *See id.; Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious" (citation omitted)).

Plaintiffs do not sufficiently plead facts that demonstrate Wellstar intercepted communications for the purpose of committing another, separate crime or tort.  In large part, Plaintiffs' allegations simply are a repackaging of a supposed violation of the Wiretap Act itself together with their remaining faulty claims and characterizing

13

the result as wire fraud.  That, however, is insufficient.  They have not presented how such purported bad acts are distinct from "the act of interception itself." *Caro v. Weintraub,* 618 F.3d 94, 101 (2d Cir. 2010).

Nor do they adequately and plausibly allege that the purported interception itself was made specifically to commit a criminal or tortious act with intent to harm. *See id.* at 100 ("Congress limited the cause of action to instances where one party to the conversation deliberately seeks to harm the other participant through the information intercepted.").  Relatedly, to the extent the purported wrongdoing they point to as part of an attempt to trigger the exception overlaps with or mirrors other legal claims asserted in this case, it does not reflect that a tort or crime has been committed (as further explained herein).  And finally, to the extent that Plaintiffs take issue with any alleged attempt by Wellstar to monetize certain information that they claim has been intercepted, that too does not qualify as an independent criminal or tortious act.  *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (the crime-tort exception does not apply when a Defendant's purpose in acting was to "make money").

As recently as two days ago, Judge Thrash ruled in a virtually identical case alleging ECPA and related common law claims against Piedmont Healthcare arising from the purported unauthorized transmission of patient confidential health

14

information through the Meta Pixel that the weight of persuasive authority requires dismissal of the Wiretap Act claim because Piedmont Healthcare was a party to any asserted communications and the crime-tort exception was inapplicable.  *See T.D. v. Piedmont Healthcare, Inc.*, Case No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024).  Likewise, Plaintiffs cannot sustain their ECPA claim in this case, and Count VIII of the amended complaint should be dismissed.

**2.    Plaintiffs have Failed to State a Claim for Invasion of Privacy**

Plaintiffs have not stated a claim for invasion of privacy despite their attempt to touch upon the required elements for such a claim.  "Under Georgia law, the tort of 'invasion of privacy' encompasses several distinct torts, including (1) intrusion upon the plaintiff's seclusion or solitude, or into his or her private affairs; and (2) public disclosure of embarrassing private facts about the plaintiff."  *Carter v. Midland Credit Mgmt., Inc.*, Case No. 10-CV-04103, 2011 WL 13318675, at *2 (N.D. Ga. Mar. 25, 2011).  To state a claim for intrusion upon seclusion or solitude, which Plaintiffs attempt to do here, they "must allege 'a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns.'"  *Boadi*, 2021 WL 2451746, at *5 (citation omitted).  This prying or intrusion is akin to a "physical intrusion which is analogous to trespass."  *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 136, 709 S.E.2d 314, 318 (2011).

15

Here, Plaintiffs' invasion of privacy claim is centered on the purported "unauthorized disclosure and/or acquisition by a third party" – not by Wellstar – "of Plaintiff's and Class Members' PII and PHI." (Dkt. No. 20 at ¶ 386.) Such an allegation dooms Plaintiffs' claim as it acknowledges the purported wrongful act was committed by someone other than Wellstar, such as Meta or Google. *Cf. Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (dismissing similar Illinois claim for disclosure of patient data to third parties, noting that "the only plausible conclusion the Court can arrive at is that the allegedly harmful intrusion here, if any, was accomplished by third parties").

Indeed, Plaintiffs – and, allegedly, other putative class members – voluntarily interacted with Wellstar's website and patient portal. "There is no intrusion upon privacy when a patient voluntarily provides personally identifiable information and protected health information to his or her healthcare provider." *Piedmont Healthcare*, 2024 WL 3972984, at *2; *see also Allen v. Novant Health, Inc.*, Case No. 1:22-CV-697, 2023 WL 5486240, at *2 (M.D.N.C. Aug. 24, 2023); *Okash v. Essentia Health*, Case. No. 23-482 (JRT/LIB), 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024); *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 242-43 (E.D. Pa. 2012); *Kurowski*, 659 F. Supp. 3d at 944; *Nienaber v. Overlake Hosp. Med.*

16

*Ctr.*, Case No. 2:23-cv-01159-TL, 2024 WL 2133709, at \*9 (W.D. Wash. May 13, 2024).

Furthermore, although not clearly articulated, this invasion of privacy claim also fails to the extent Plaintiffs try to base it upon a theory of public disclosure of embarrassing private facts. In Georgia:

> to recover on a theory of public disclosure of embarrassing private facts, a party must prove: (1) the disclosure of the private facts was a public one; (2) the facts disclosed were private, secluded, or secret facts; and (3) the matter made public was offensive and objectionable to a reasonable person of ordinary sensibilities under the circumstances.

*Boadi*, 2021 WL 2451746, at \*6 (citations and marks omitted). The alleged conduct that Plaintiffs reference – such as data collection and disclosure, and webpage analytics – is far from being highly offensive. *Cf. In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014) (Google's collection and disclosure of user data was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (The transmission and disclosure of a "unique device identifier number, personal data, and geolocation information" from a device without the consent or knowledge of the device "does not constitute an egregious breach of social norms."). Nor have Plaintiffs alleged that such information was publicized beyond a discrete number of third parties in a manner that would be actionable. *See* Restatement (Second) of Torts, § 652D, comment a.

17

(1977) ("Publicity . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.").

Count I of the amended complaint should, therefore, be dismissed.

### 3.    Plaintiffs have Failed to State a Claim for Breach of Fiduciary Duty

"In Georgia, a breach of fiduciary duty claim requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Vavro v. ARC Grp. Worldwide Inc.*, Case No. 1:18-CV-0500-CAP, 2018 WL 7077155, at *2 (N.D. Ga. June 20, 2018) (marks omitted).   At the very least, Plaintiffs have failed to sufficiently allege facts that satisfy the first and third elements of this claim.

A fiduciary duty arises under Georgia law when "one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." *Id.* (quoting O.C.G.A. § 23-2-58). "[T]he mere fact that one reposes trust and confidence in another" is not enough. *Curry v. TD Ameritrade, Inc.*, Case No. 1:14-CV-1361-LMM, 2015 WL 11251449, at *10 (N.D. Ga. June 30, 2015).  Moreover,

18

a "trial court may decide whether a fiduciary relationship exists as a matter of law where the facts are patent, unambiguous, and undisputed." *Id.*

Plaintiffs fail to allege the existence of a fiduciary relationship between Wellstar and any of the Plaintiffs or any other purported class member. Wellstar's status as a healthcare provider does not invariably give rise to a fiduciary relationship with all actual or potential patients in every circumstance. *See Cox v. Athens Reg'l Med. Ctr., Inc.*, 279 Ga. App. 586, 593, 631 S.E.2d 792, 798 (2006) (declining to "recognize a fiduciary relationship between a hospital and a patient with respect to pricing"). Even giving Plaintiffs the benefit of reasonable inferences, the deliberate interactions between Plaintiffs and the purported class members do not implicate a duty of a fiduciary nature. For this reason alone, the claim must be dismissed. *See Prime Mgmt. Consulting & Inv. Servs., LLC v. Certain Underwriters at Lloyd's London*, Case No. 1:07-CV-1578-WSD, 2007 WL 4592099, at \*5 (N.D. Ga. Dec. 28, 2007) (dismissal of breach of fiduciary claim due to absence of fiduciary duty).

Furthermore, Plaintiffs have not pleaded facts specifying any damages that proximately arose from the purported breach of the supposed fiduciary duty. (See Dkt. No. 20 at ¶¶ 400-402). Indeed, to the extent damages are alleged at all, they are asserted in an identical conclusory manner for each of the four Plaintiffs:

> (i) invasion of privacy; (ii) lost time and opportunity costs associated with attempting to mitigate the actual

19

> consequences of the disclosure of [her or his] Private Information; (iii) loss of benefit of the bargain; (iv) diminution of the value of the Private Information; (v) statutory damages and (v)[sic] the continued and ongoing risk to [her or his] Private Information.

(Dkt. No. 20 at ¶¶ 305, 323, 340, 355).  No facts are alleged to support these claimed damages.  Just as Judge Thrash determined in the analogous *Piedmont Healthcare* case, damages theories of this nature untethered by facts are untenable and not actionable.  *See Piedmont Healthcare*, 2024 WL 3972984, at *3 (dismissing breach of fiduciary duty claim where plaintiffs alleged the following conclusory damages: "(i) invasion of privacy, including increased spam and targeted advertising they did not ask for; (ii) loss of confidentiality; (iii) embarrassment, emotional distress, humiliation and loss of enjoyment of life; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the disclosure of their Private Information; (v) loss of benefit of the bargain; (vi) diminution of the value of Private Information and (vii) the continued and ongoing risk to their Private Information."); *see also Everhart v. Colonial Pipeline Co.*, Case No. 1:21-CV-3559-MHC, 2022 WL 3699967, *2-*5 (N.D. Ga. Jul. 22, 2022); *Provost v. Aptos, Inc.*, Case No. 1:17-CV-02120-ELR, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018).

Accordingly, Plaintiffs breach of fiduciary duty claim in Count II likewise should be dismissed by this Court.

20

### 4.      Plaintiffs have Failed to State a Claim for Negligence

Plaintiffs' negligence claim also is deficient.  "Under Georgia law, the elements of a negligence claim are: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty."  *Boadi*, 2021 WL 2451746, at *6 (quoting *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017)).  "The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care."  *Smith*, 873 F.3d at 1352.  Plaintiffs fail to satisfy that standard.

Plaintiffs' negligence claim largely consists of a recitation of the elements of the claim itself, which is insufficient.  *See Twombly*, 550 U.S. at 555.  Even so, their attempt to go beyond the elements does not salvage the claim.  Plaintiffs assert, in connection with this claim, that "Defendant Wellstar's duty to use reasonable care in protecting confidential data arose also because Defendant is bound by industry standards to protect confidential Private Information."  (Dkt. No. 20 at ¶ 409).  But that allegation is not enough to avoid dismissal.  Plaintiffs fails to tie this purported

21

failure to adhere to industry standards to a breach of a duty of care owed to Plaintiffs or to any other potential class member. *See Smith*, 873 F.3d at 1353.

And just as Plaintiffs' conclusory allegations of damages are insufficient to support their claim of breach of fiduciary duty (*supra*, pp. 18-19), so too are they uncognizable in the context of their negligence claim. *See Piedmont Healthcare*, 2024 WL 3972984, at *4. Plaintiffs' failure to plead actionable damages is a separate and independent ground for dismissing the claim of negligence.

The economic loss rule is an additional basis for dismissing Plaintiffs' negligence claim. In Georgia, "[u]nder the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property; a plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another." *Gen. Elec. Co. v. Lowe's Home Centers, Inc.*, 279 Ga. 77, 78, 608 S.E.2d 636, 637 (2005). Plaintiffs and the other putative class members, therefore, are prohibited from pursuing a claim based on supposed negligent acts for what amounts to purely economic losses in the absence of personal injury or property damage. Plaintiffs fail to point to any personal

22

injuries or property damage here, and therefore the negligence claim at Count III should be dismissed with prejudice as well.[1]  *See id.*

### 5.    Plaintiffs have Failed to State a Claim for Negligence Per Se

Like her negligence claim, Plaintiffs' negligence per se claim is deficient.  "In the case of negligence per se . . . a violation of the statute satisfies, as a matter of law, the duty and breach elements of a negligence claim" and a claim "arises when a statute or ordinance is violated."  *Williford v. Bayview Loan Servicing, LLC*, Case No. 1:16-CV-4268-ELR-LTW, 2017 WL 11151639, at *5 (N.D. Ga. July 14, 2017), *report and recommendation adopted*, 2017 WL 11151638 (N.D. Ga. Aug. 7, 2017).  But a statutory violation alone does not constitute negligence per se.  *See id.*  A court must "consider the purpose of the legislation" and "decide (1) whether the injured person falls within the class of persons the law was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against."  *Id.*

After distilling their allegations down, it is apparent that Plaintiffs base their negligence per se claim on supposed violations of two statutory schemes:  the Health Insurance Portability and Accountability Act ("HIPAA") and Section 5 of the FTC

---

[1] Although Plaintiffs fail to adequately allege the existence of a contract between any of them – or any other purported class member – and Wellstar, damages from the breach of any such contract similarly would not be recoverable under a negligence theory in view the economic loss rule.  *See id.*

Act, 15 U.S.C. § 45.  (Dkt. No. 20 at ¶¶ 416-427).  But neither adequately supports a negligence per se claim in view of their allegations.

Because HIPAA does not provide for a private right of action, courts have dismissed negligence per se claims based on that statutory scheme.  *See, e.g., Austin v. Atlina*, Case No. 20-CV-6363-YGR, 2021 WL 6200679, at *3 (N.D. Cal. Dec. 22, 2021).  Indeed, this District has recognized that such claims are not viable.  *See Scoggins v. Floyd Healthcare Mgmt. Inc.*, Case No. 14-CV-00274, 2016 WL 11544908, at *27 (N.D. Ga. Aug. 30, 2016) ("[the] negligence per se claim fails as a matter of law, because HIPAA does not provide a civil remedy and, under Georgia law, a plaintiff may not pursue a negligence per se claim under O.C.G.A § 51-1-6 if the statute or regulation that supposedly gives rise to the legal duty does not provide a civil remedy"); *see also Laster v. CareConnect Health Inc.*, 852 F. App'x 476, 478 (11th Cir. 2021) (explaining that "no private right of action exists under HIPAA" and noting that multiple circuit courts are in agreement with that conclusion).

Similarly, a negligence per se claim based on Section 5 of FTC Act should be dismissed.  Like HIPAA, Section 5 of the FTC Act does not allow for a private cause of action which vitiates any potential negligence per se claim under that theory.  *See Horton v. HSBC Bank*, Case No. 1:11-CV-3210-TWT, 2013 WL 2452273, at *9 (N.D. Ga. June 5, 2013) (dismissing claim under Section 5 of the FTC Act because

24

it contains no private right of action); *In re Netgain Tech., LLC*, Case No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606, at *16 (D. Minn. June 2, 2022) ("Plaintiffs have not cited any precedent in California, Minnesota, Nevada, South Carolina, or Wisconsin that permits a state-law negligence per se claim to proceed based on the theory that there is a violation of Section 5 of the FTC Act.").

Furthermore, although Plaintiffs represent that Section 5 of the FTC Act is meant to protect consumers (Dkt. No. 20 at ¶ 425), they ignore that Plaintiffs and the purported class are not the individuals that Section 5 is meant to protect. *See Williford*, 2017 WL 11151639, at *5. The statute was enacted by Congress to charge the FTC with protecting consumers and competitors "from the evils likely to result from the destruction of competition or the restriction of it in a substantial degree." *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 241, 244. The purported wrongdoing alleged by Plaintiffs and the purported class here does not fall within that scope. The section is not meant to create a means for protecting consumers from any conceivable harm under all circumstances. Thus, Count IV of the amended complaint also should be dismissed with prejudice.

**6.    Plaintiffs have Failed to State Claims for Breach of Either an Implied or an Express Contract**

"In Georgia, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom."

25

ME1 49597491v.1

*Brooks v. Branch Banking & Tr. Co*., 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015).

Furthermore, the essential elements of an enforceable agreement include (1) parties

able to contract, (2) consideration, (3) assent of the parties to the terms, and (4)

subject matter to which the contract may operate.  O.C.G.A. § 13-3-1.  To prevail on

a breach of contract claim, the plaintiff must plead and prove mutual assent.  *See*

*BDI Laguna Holdings, Inc. v. Marsh*, 301 Ga. App. 656, 664 (2009).  Furthermore,

"a plaintiff asserting a breach of contract claim must allege a particular contractual

provision that the defendants violated to survive a motion to dismiss."  *Brooks*, 107

F. Supp. 3d at 1296.

Plaintiffs fail to allege facts that even suggest the existence of a contract –

whether implied or express – between any of them or any other member of the

putative class and Wellstar.  Critically, in addition to other deficiencies, Plaintiffs

fail to adequately allege – for either type of contract – that the parties "assent[ed] to

the same thing in the same sense, and their minds [met] as to all the terms."  *BDI*

*Laguna Holdings*, 301 Ga. App. at 664.

With respect to their allegations regarding the purported breach of an implied

contract, Plaintiffs suggest that Wellstar had some heightened duty owed to Plaintiffs

and the putative class members to "safeguard and not disclose their Private

Information without consent."  (Dkt. No. 20 at ¶ 433).  But they do not – because

26

they cannot – credibly allege that Wellstar assented to specific obligations to the Plaintiffs and the purported class that extend beyond what is required by law. *See Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 853, 797 S.E.2d 814, 819 (2017) (implied contracts require mutual agreement); *cf. In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, Case No. CV 19-MD-2904, 2021 WL 5937742, at *20 (D.N.J. Dec. 16, 2021) (stated intent to follow the privacy requirements of HIPAA "do[es] not support an independent cause of action for breach of implied contract").

Nor have Plaintiffs sufficiently alleged the existence of any implied contract supported by consideration. Although they claim that Plaintiffs and the class members provided Wellstar with private information, there are no allegations even suggesting that Wellstar agreed to refrain from certain behavior or provide something beyond medical treatment or access to its website and patient portal in return. *Gaucher v. U.S. Bank*, Case No. 1:12-CV-00591-WSD, 2012 WL 13013640, at *5 (N.D. Ga. Oct. 29, 2012) (dismissing breach of contract claim due to, *inter alia*, a failure to allege consideration). Accordingly, Plaintiffs' breach of implied contract claim is not viable.

Their claim for breach of an express contract is deficient for similar reasons. For this claim, Plaintiffs do not point to a single document constituting an agreement

27

between any of them and Wellstar, but instead try to cobble together an express contract by pointing to largely unidentified "multiple documents, including (among other documents) Defendant's Privacy Notice."  (Dkt. No. 20 at ¶ 445).  But critically, Plaintiffs neither sufficiently claim that those materials were intended to be an offer for a contract by Wellstar nor demonstrate that additional consideration was exchanged supporting an express contract.  *See BDI Laguna Holdings*, 301 Ga. App. at 664; *Gaucher*, 2012 WL 13013640, at *5.  Their argument that a contract arose because they supposedly relied upon Wellstar's privacy notice is misguided. Plaintiffs also fail to adequately identify any specific contractual provision that purportedly was violated, which further dooms their claim.  *Brooks*, 107 F. Supp. 3d at 1296 .

And Plaintiffs' attempt to salvage the breach of express contract claim by invoking breach of the covenant of good faith and fair dealing (Dkt. No. 20 at ¶ 365) must be rejected in the absence of any underlying contract.  *See Shofner v. CitiMortgage, Inc.*, Case No. 11-CV-0254, 2011 WL 13229645, at *7 (N.D. Ga. Dec. 12, 2011) ("absent a breach of some other contract provision, a party cannot maintain a claim for breach of the covenant of good faith and fair dealing").  Accordingly, each of these deficiencies warrant dismissal of Plaintiffs' breach of express contract claim.

ME1 49597491v.1

Finally, for both the breach of implied and express contract claims, Plaintiffs fail to adequately allege damages arising from a purported breach.  That too, dictates dismissal.  For her implied contract claims, other than reciting the damages element itself, Plaintiffs suggest that they and the class members would not have entered into a contract. (Dkt. No. 20 at ¶ 437).  However, that does not constitute damages arising from a breach. With respect to the express contract claim, in addition to essentially repeating the faulty damages argument from the implied contract claim (*id.* at ¶¶ 456, 459), Plaintiffs assert that the purported breach resulted in the receipt of "healthcare and other services . . . of a diminished value" (*id.* at ¶ 455), other inadequately identified damages, and damages that somehow relate to the disclosure of private information.  (*Id.* at ¶ 459).  But again, those either are not viable contract damages or are damages that do not flow from a purported breach.  Moreover, Plaintiffs' generalized conclusory damages allegations are deficient for their breach of contract claims just as they are inadequate for their claims of breach of fiduciary duty (*supra*, pp. 18-19) and of negligence (*supra*, p. 21).  *See Piedmont Healthcare*, 2024 WL 3972984, at *4.

For all of the above reasons, both Count V and Count VI of the amended complaint should be dismissed with prejudice.

ME1 49597491v.1

### 7.    Plaintiffs Have Failed to State a Claim for Unjust Enrichment

In Georgia, "unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Brooks*, 107 F. Supp. 3d at 1298  (citation omitted). "To prevail on a claim for unjust enrichment, a plaintiff thus must ultimately prove (1) that it conferred a benefit on the defendant and (2) that equity requires the defendant to compensate for that benefit." [2]  *Id*.

Plaintiffs' unjust enrichment allegations are merely threadbare, conclusory recitals of the elements of the claim, which warrants dismissal.  *Brooks*, 107 F. Supp. 3d at 1298.  Even if viewed in a light most favorable to Plaintiffs, the allegations are essentially a claim that Wellstar received economic benefits and "substantial monetary compensation" through the receipt of private information of Plaintiffs and the putative class members, which Wellstar retained in an unjust manner.  (*See* Dkt. No. 20 at ¶¶ 461-468).  However, Plaintiffs fail to allege why the supposed benefit they or any other putative class member "paid to Defendant conferred a benefit to

---

[2] Plaintiffs note that their unjust enrichment claim is "pled in the alternative to Plaintiff's Breach of Implied Contract and Breach of Express Contract counts." (Dkt. No. 20 at ¶ 462).  Although no express or implied contract between any Plaintiff or any purported class member and Wellstar exists, should the Court determine to the contrary, Plaintiffs' unjust enrichment claim is precluded.  *See Davidson v. Maraj*, 609 F. App'x 994, 997 (11th Cir. 2015); *Brooks*, 107 F. Supp. 3d at 1298.

ME1 49597491v.1

Defendant that requires [them] to be compensated." *Brooks*, 107 F. Supp. 3d at 1298; *see also Piedmont Healthcare*, 2024 WL 3972984, at *4 (Defendant healthcare provider was not unjustly enriched where patient private information allegedly was transmitted to Meta without authorization via the Meta Pixel).

Relatedly, Plaintiffs cannot credibly claim that they and the putative class members obtained no benefit whatsoever from Wellstar; at a minimum they received access to information on Wellstar's website and, presumably, medical treatment. In fact, at least one other court has recognized that it is inappropriate for a party to expect remuneration due to their online activity for the purposes of an unjust enrichment claim. *See In re Nickelodeon Consumer Priv. Litig.*, Case No. CIV.A. 12-07829, 2014 WL 3012873, at *19 (D.N.J. July 2, 2014) ("it simply is not reasonable for a consumer—regardless of age—to use the internet without charge and expect compensation because a provider of online services has monetized that usage"). That principle is applicable here as well. Plaintiffs' failure to allege facts supporting all of the elements of an unjust enrichment claim warrant the dismissal of Count VII of the amended complaint.

## CONCLUSION

Wellstar has amply demonstrated that all of Plaintiffs' claims are fatally deficient. The ECPA claim fails because Wellstar did not engage in an unlawful

31

interception of any contents of communications, and the exception for tortious or criminal conduct is inapplicable.  No invasion of privacy exists because Plaintiffs claim a third party – and not Wellstar – was purportedly responsible.  There is no fiduciary duty or duty of care alleged by Plaintiffs to support the breach of fiduciary duty and negligence claims, much less properly-pleaded damages.  The negligence per se claim cannot be based upon HIPAA or Section 5 of the FTC Act.  Plaintiffs have not alleged facts supporting the existence of an implied or express contract, including mutual assent, consideration or contractual damages.  And finally, the unjust enrichment claim is misguided since Plaintiffs conveyed no benefit to Wellstar that merits compensation.

Accordingly, the Court should dismiss Plaintiffs' amended complaint in its entirety, and that dismissal should be with prejudice since Plaintiffs already have had an opportunity to amend their complaint to cure their pleading deficiencies.  *See, e.g.*, *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys*., 673 Fed. Appx. 925 (11th Cir. 2016).

Dated: August 30, 2024                     Respectfully submitted,


                                           */s/ Robert M. Brennan*
                                           Robert M. Brennan
                                           **PARKER, HUDSON, RAINER & DOBBS, LLP**

32

303 Peachtree Street NE
Suite 3600
Atlanta, GA 30308
Phone: 404-523-5300
Fax: 404-522-8409
bbrennan@phrd.com

Scott S. Christie (*pro hac vice*)
Matthew A. Sklar (*pro hac vice*)
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry St.
Newark, NJ 07172
Phone: (973) 622-4444
Fax: (973) 624-7070
schristie@mccarter.com
msklar@mccarter.com

*Counsel for Defendant*
*Wellstar Health System, Inc.*

33

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned certifies that this brief has been prepared in Times New Roman 14-point font in accordance with Local Rule 5.1(C).

This 30th day of August 2024.

*/s/ Robert M. Brennan*
Robert M. Brennan

34

ME1 49597491v.1

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of August, 2024, I caused the foregoing

to be electronically served with the Clerk of Court using the CM/ECF System, which

automatically serves all counsel of record.


*/s/ Robert M. Brennan*
Robert M. Brennan

1

ME1 49597491v.1