**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JANE DOE, JANE DOE #2, JANE DOE #3, and JOHN DOE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>WELLSTAR HEALTH SYSTEM, INC.,<br><br>Defendant. | Case No.: 1:24-cv-01748-JPB |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**


**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
Brandon M. Wise*
One US Bank Plaza,
Suite 1950
St. Louis, MO 63101
(314) 833-4825
bwise@ peifferwolf.com

Andrew R. Tate
235 Peachtree St. NE,
Suite 400
Atlanta, GA 30303
(404) 282-4806
atate@peifferwolf.com

**ALMEIDA LAW GROUP LLC**
David S. Almeida*
Britany A. Kabakov*
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com
britany@almeidalawgroup.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger*
Glen L. Abramson**
Alexandra M. Honeycutt**
227 W. Monroe Street,
Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com
gabramson@milberg.com
ahoneycutt@milberg.com

* admitted *pro hac vice*

** *pro hac vice* to be sought

*Counsel for Plaintiffs & the Class*

## TABLE OF CONTENTS


Table of Authorities ........................................................................................ ii

INTRODUCTION ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................ 3

LEGAL STANDARD .................................................................................... 7

ARGUMENT .................................................................................................. 7

I. Plaintiffs Well-Pled Allegations Support Their ECPA Claim. ................ 7

A. Plaintiffs Plausibly Allege an Interception. ........................................ 8

B. Plaintiffs Describe the Contents of Their Communications That Were Disclosed or Improperly Used. ........................................ 10

C. The One-Party Exemption Does Not Apply Because Plaintiffs Plausibly Allege that Wellstar Committed a Crime or Tort. ............. 12

D. Factual Questions Should Not Be Resolved on a Motion to Dismiss. ..................................................................... 17

II. Plaintiffs Sufficiently Allege their Common Law Claims. .................... 18

A. Plaintiffs Allege a Plausible Intrusion upon Seclusion Claim. ......... 18

B. Plaintiffs Plead All Elements for Breach of Fiduciary Duty. ........... 20

C. Plaintiffs Allege a *Prima Facie* Claim for Negligence. ...................... 23

D. Plaintiffs Adequately Allege a Claim for Negligence Per Se. .......... 24

E. Plaintiffs Sufficiently State Claims for Breach of Either an Implied or an Express Contract. ................................................... 26

F. Plaintiffs State a Strong Claim for Unjust Enrichment. ...................... 28

III. Plaintiffs Adequately Plead Damages for All Claims. ............................. 31

A. Plaintiffs Sufficiently Plead Loss of Privacy Damages. ..................... 31

B. Plaintiffs Allege Diminished Value of Their Private Information. .... 32

C. Plaintiffs Allege They Did Not Receive the Benefit of Their Bargain. ......................................................................... 33

D. The Economic Loss Rule Does Not Apply. ........................................ 34

E. Plaintiffs Allege Other Compensable Harm. ...................................... 35

CONCLUSION ........................................................................................ 35

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*A.D. v. Aspen Dental Mgmt. Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) .................................... 2, 12, 14

*Allen v. Novant Health, Inc.,*
2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .......................................... 22

*Amick v. BM & KM, Inc.,*
275 F. Supp. 2d 1378 (N.D. Ga. 2003) ...................................................... 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 7

*Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*,
269 Ga. 604 (1998) ........................................................................................ 21

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ................................................ 2

*Baker v. ParkMobile, LLC*,
2022 WL 3704003 (N.D. Ga. Aug. 19, 2022) .............................................. 3

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal.Super. Jan. 5, 2023) .............................................. 20

*BDI Laguna Holdings, Inc. v. Marsh*,
301 Ga. App. 656 (2009) ............................................................................... 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 7

*Bishop v. Shorter Univ., Inc.*,
2015 WL 13753710 (N.D. Ga. June 4, 2015) .......................................... 22

*Briggs v. N. Highland Co.*,
2024 WL 519722 (N.D. Ga. Feb. 9, 2024) ....................................... 3, 24, 33

*Brooks v. Branch Banking & Tr. Co.*,
107 F. Supp. 3d 1290 (N.D. Ga. 2015) ................................................ 26, 29

*Brown v. Google, LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........................................... 32

*Collins v. Athens Orthopedic Clinic, P.A.*,
307 Ga. 555 (2019) ........................................................................................ 3

*Cooper v. Mount Sinai Health Systems, Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024) ............................ 2, 14, 15, 17

*Cousin v. Sharp Healthcare*,
2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ........................................... 19

*Covington v. Gifted Nurses, LLC*,
2023 WL 5167366 (N.D. Ga. July 19, 2023) .......................................... 3, 26

*Cox v. Athens Regional Medical Center, Inc.*
279 Ga. App. 586 (2006) ...................................................................... 21-22

*Ctr. L. & Consulting, LLC v. Axiom Res. Mgmt., Inc.*,
456 F. Supp. 3d 765 (E.D. Va. 2020) ............................................................ 8

*David C. Joel, Att'y at L., P.C. v. Chastain*,
254 Ga. App. 592 (2002) ............................................................................ 35

*Doe v. Bon Secours Mercy Health*,
2021 WL 9939010 (Ohio Com.Pl. Nov. 22, 2021) ..................................... 20

*Doe v. Coffee Reg. Med. Ctr., Inc.*, No. SUV2023000627
(Ga. Super. Ct. Coffee County Sept. 6, 2024) ................................ 19, 22-23

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) ................................................ 8

*Doe v. Smith*,
429 F.3d 706 (7th Cir. 2005) ...................................................................... 18

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .............................................. 10

*Doe v. Tenet Healthcare Corp.,*
2024 WL 1756075 (D. Mass. Apr. 23, 2024) ............................................ 29

*Douglas v. Bigley*,
278 Ga.App. 117 (2006) ........................................................................... 21

*Dusek v. JPMorgan Chase & Co.*,
832 F.3d 1243 (11th Cir. 2016) ..................................................................... 7

*E.H. v. Meta Platforms, Inc.*,
2024 WL 557728 (N.D. Cal. Feb. 12, 2024) ............................................... 33

*Enslin v. The Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) ........................................................ 27

*Everhart v. Colonial Pipeline Co.*
2022 WL 3699967 (N.D. Ga. July 22, 2022) .............................................. 33

*Fed. Trade Comm'n v. Hornbeam Special Situations, LLC*,
391 F. Supp. 3d 1218 (N.D. Ga. 2019) ......................................................... 7

*Flores-Mendez v. Zoosk, Inc*.,
2021 WL 308543 (N.D. Cal. Jan. 30, 2021) ............................................... 31

*F.T.C. v. Wyndham Worldwide Corp*.,
799 F.3d 236 (3d Cir. 2015) ...................................................................... 26

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .................................. 2, 32-33

*Gilbert v. BioPlus Specialty Pharm. Servs., LLC*,
2023 WL 3555006 (M.D. Fla. Mar 3, 2023) ............................................... 28

*Hammerling v. Google LLC,*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................... 11

*In re Arby's Rest. Grp. Inc. Litig.*,
2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) .......................................... 3, 25

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
371 F. Supp. 3d 1150 (N.D. Ga. 2019) ...................................................... 25

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
362 F. Supp. 3d 1295 (N.D. Ga. 2019) ........................................................ 2

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
2022 WL 1122841 (N.D. Ga. Apr. 13, 2022) ......................................... 2, 24

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................................................................... 8

*In re Facebook Priv. Litig.,*
572 F. App'x 494 (9th Cir. 2014) ............................................................... 32

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ....................................................... 10

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) .......... 2, 8-9, 17, 19, 29, 31-32

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ........................................................ 28

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......................................... 2, 9, 11-12

*In re Nickelodeon Consumer Privacy Litigation,*
2014 WL 3012873 (D.N.J. July 2, 2014) ................................................... 30

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
2016 WL 2897520 (N.D. Ga. May 18, 2016) ............................................... 3

*In re Zynga Privacy Litigation*
750 F.3d 1098 (9th Cir. 2014) .................................................................... 11

*Irwin v. RBS Worldpay, Inc.*,
2010 WL 11570892 (N.D. Ga. Feb. 5, 2010) .............................................. 3

*Jenkins v. Wachovia Bank, N.A.*,
314 Ga. App. 257 (2012) ......................................................................... 25

*Johnson v. 3M*,
563 F. Supp. 3d 1253 (N.D. Ga. 2021) ...................................................... 34

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. March 19, 2024) .......................................... 2

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................................................... 14

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ....................................................... 32

*Kurowski v. Rush System for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .................................................... 15-16

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ................................... 2, 16, 17

*Kurowski v. Rush System for Health*,
2024 WL 3455020 ((N.D. Ill. July 18, 2024) ............................................. 16

*McCulley v. Banner Health*, No.
23-CV-00985-PHX-SPL (D. Ariz. June 21, 2024) ...................................... 2

*Mehta v. Robinhood Fin. LLC*,
2021 WL 6882377 (N.D. Cal. May 6, 2021) ............................................. 31

*Meyer v. Christie*,
2007 WL 3120695 (D. Kan. Oct. 24, 2007) ................................................ 28

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024) ...................................... 2, 20, 29

*Mekhail v. N. Mem'l Health Care*,
2024 WL 1332260 (D. Minn. Mar. 28, 2024) ........................................ 2, 29

*Provost v. Aptos*,
2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) ............................................ 34

*Pulte Home Corp.*,
322 Ga. App. 699 (2013) ...................................................................... 24-25

*Purvis v. Aveanna Healthcare, LLC*,
563 F. Supp. 3d 1360 (N.D. Ga. 2021) .................................... 2-3, 22-24, 26

*Ramirez v. Paradies Shops, LLC*,
69 F.4th 1213 (11th Cir. 2023) .................................................................. 24

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024) ........................................... 2, 17

*Rivell v. Private Health Care Sys., Inc.*,
520 F.3d 1308 (11th Cir. 2008) ................................................................... 7

*Rivera v. Stroup*,
2019 WL 13227185 (N.D. Ga. Oct. 18, 2019) ............................................ 35

*Schinazi v. Eden,*
338 Ga. App. 793 (2016) ........................................................................... 20

*Sitton v. Print Direct., Inc.*,
312 Ga.App. 365 (2011) ............................................................................ 18

*Smith v. Loyola University Med. Ctr*,
2024 WL 3338941 (N.D. Ill., July 9, 2024) ................................................ 2

*Sweat v. Houston Methodist Hosp.*,
2024 WL 3070184 (S.D. Tex. June 20, 2024) ............................................. 2

*Stadterman v. Southwood Realty Co.*,
361 Ga. App. 613 (2021) ........................................................................... 23

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ............................................ 16

*Tracy v. Elekta, Inc.*,
667 F. Supp. 3d 1276 (N.D. Ga. 2023) ............................................. 3, 24-25

*Walters v. Kimpton Hotel & Rest. Grp., LLC*,
2017 WL 1398660 (N.D. Cal. Apr. 13, 2017) ........................................... 27

*Wells Fargo Bank, N.A. v. Jenkins*,
293 Ga. 162 (2013) ........................................................................... 25

*Yarbray v. S. Bell Tel. & Tel. Co.*,
261 Ga. 703(1991) ............................................................................. 18

**<u>Statutes</u>** **<u>Pages</u>**

Electronic Communications Privacy Act
28 U.S.C. § 2511 ........................................................................ *passim*

FTC Act, 15 U.S.C. § 45 ............................................................................. 26

Ga. Code Ann. § 51–1–6 ............................................................................. 25

Ga. Code Ann. § 51-1-11(a) ......................................................................... 34

Health Insurance Portability and Accountability Act of 1996
Pub. L. No. 104-191, 110 Stat. 1936 (1996) ......................................... *passim*

**<u>Other Authority</u>** **<u>Pages</u>**

FED. R. CIV. P. 12(b)(6) .............................................................................. 7

FED. R. CIV. P. 15(a)(2) ............................................................................. 35

## INTRODUCTION

Defendant Wellstar Health System, Inc. ("Wellstar" or "Defendant") installed data collection and tracking technologies on its website and patient portal to collect its patients' personally identifiable information ("PII"), protected health information ("PHI," and with PII, "Private Information") and individually identifiable health information ("IIHI") not just to provide healthcare services, but to divulge that information to third parties like Meta and Google without consent.[1] Defendant's use of these tracking technologies, as detailed in the Complaint,[2] is expressly proscribed by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996).

Wellstar attempts to avoid judicial scrutiny by arguing Plaintiffs' allegations are conclusory and by trying to minimize the severity and import of its use of the tracking tools to divulge its patients' Private Information. *See* Defendant's Motion to Dismiss ("MTD"), ECF No. 23-1. But Plaintiffs allege the information that was disclosed to unauthorized third parties included their specific health information,

---

[1] The Facebook tracking and data collection tools include the Meta Pixel, Meta SDK, Meta Conversions API, customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions and similar collection tools (collectively, "Meta Collection Tools"). The Google tracking and collection tools include Google Analytics, Google Tag Manager, DoubleClick, social plug-ins, server-to-server transmissions and similar collection tools (collectively, "Google Collection Tools").

[2] All paragraph citations herein are to Plaintiffs' Amended Class Action Complaint, ECF No. 20. The Amended Complaint is referred to herein as the "Complaint."

such as medical symptoms, conditions, treatments sought and physician selected, in addition to their logins to Wellstar's patient portal and payment of medical bills. *See, e.g.*, ¶¶ 6, 12, 88, 291-96, 309-314, 329-31 & 344-46.

Courts across country have repeatedly denied requests to dismiss nearly identical claims under the Electronic Communication Privacy Act ("ECPA"),[3] and state and federal courts in Georgia have repeatedly upheld similar data privacy claims.[4] By installing the tracking technologies at issue, in a manner that disclosed

---

[3] *See, e.g.*, *Gay v. Garnet Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (denying motion to dismiss ECPA claim "based around criminal or tortious use of private and protected data relating to patient's medical care"); *A.D. v. Aspen Dental Mgmt. Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) ("*Aspen Dental*") (same); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024); *Cooper v. Mount Sinai Health Systems, Inc.*, 2024 WL 3586357, at *9-11 (S.D.N.Y. July 30, 2024); *Smith v. Loyola University Med. Ctr*, 2024 WL 3338941, at *7 (N.D. Ill., July 9, 2024); *McCulley v. Banner Health*, No. 23-CV-00985-PHX-SPL (D. Ariz. June 21, 2024) (denying motion for reconsideration of the May 10, 2024 Order wherein the court upheld plaintiff's ECPA claim); *Sweat v. Houston Methodist Hosp.*, 2024 WL 3070184, at *3-4 (S.D. Tex. June 20, 2024) (finding crime-tort exception applies for disclosure of IIHI); *R.C. v. Walgreen Co*., 2024 WL 2263395 (C.D. Cal. May 9, 2024) (denying motion to dismiss ECPA claim and common law claims for invasion of privacy and unjust enrichment); *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024); *Kane v. Univ. of Rochester*, 2024 WL 1178340 (W.D.N.Y. March 19, 2024); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. Dec. 22, 2022); *In re Grp. Health Plan Litig.*, 2023 WL 8850243 (D. Minn. Dec. 21, 2023) (similar); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023).

[4] *See*, *e.g.*, *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1308 (N.D. Ga. 2019); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 2022 WL 1122841 (N.D. Ga. Apr. 13, 2022); *Purvis v. Aveanna Healthcare, LLC*,

sensitive health information, Wellstar intentionally put its revenue over the privacy rights of its patients. Plaintiffs plead plausible claims for relief and the motion to dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

Four Plaintiffs assert individual and representative claims against Wellstar due to its disclosure of their Private Information to third party social media and digital advertising companies without consent and in violation of federal and state law and Wellstar's own privacy policies.

Like many patients and prospective patients, Plaintiffs used Wellstar's Website, available at https://www.wellstar.org/ (the "Website") and its "Wellstar MyChart" patient portal, available at mychart.wellstar.org, (the "Patient Portal," collectively, the "Web Properties"), to communicate with their healthcare providers. The Complaint includes detailed allegations of each Plaintiff's communications with Defendant that were intercepted and disclosed to third parties without consent.

---

563 F. Supp. 3d 1360, 1365 (N.D. Ga. 2021); *Covington v. Gifted Nurses, LLC*, 2023 WL 5167366 (N.D. Ga. July 19, 2023); *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520 (N.D. Ga. May 18, 2016); *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018); *Irwin v. RBS Worldpay, Inc.*, 2010 WL 11570892 (N.D. Ga. Feb. 5, 2010); *Baker v. ParkMobile, LLC*, 2022 WL 3704003 (N.D. Ga. Aug. 19, 2022), *reconsideration denied*, 2022 WL 18461860 (N.D. Ga. Dec. 20, 2022); *Briggs v. N. Highland Co.*, 2024 WL 519722 (N.D. Ga. Feb. 9, 2024); *Tracy v. Elekta, Inc.*, 667 F. Supp. 3d 1276, 1285 (N.D. Ga. 2023); *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 555 (2019).

Plaintiff Jane Doe has been diagnosed with conditions such as high blood pressure and cholesterol and an abscess on her posterior that required surgery in 2017. *See* ¶¶ 293-94. Plaintiff used Defendant's Web Properties from May 2013 to present to submit detailed information about her medical conditions, make appointments and exchange messages with her doctors, fill out questionnaires requested by her doctors, request referrals for her health issues, refill her prescriptions, update her medication information and check her test results. ¶¶ 291-92. In 2016 and 2022, Plaintiff Jane Doe exchanged messages with her healthcare providers on Defendant's Web Properties about modifying her dosages of Metoprolol and Atorvastatin. ¶ 293; *see also* ¶¶ 294-96 (describing additional medical communications, review of test results and referrals).

Plaintiff Jane Doe #2 has been diagnosed with conditions such as COPD and Emphysema and has been treated for gastrointestinal distress, ulcers and has had lung cancer screenings, cardiology tests, EKG exams and sleep apnea studies. ¶¶ 311-12. Plaintiff Jane Doe #2 used Defendant's Web Properties from 2014 to present to submit detailed information about her medical conditions, make appointments and exchange messages with her doctors, fill out questionnaires requested by her doctors, request referrals for her specific health issues, update her medication information and check her medical test results. ¶¶ 309-11. Between 2014 and April 2024, Plaintiff exchanged messages on Defendant's Web Properties about her lung cancer

screening results, references for specialists and the medications that she was prescribed. ¶ 311; *see also* ¶¶ 313-14 (describing additional communications).

Plaintiff Jane Doe #3 has been diagnosed with sleep apnea, memory loss and high blood pressure and has had multiple cervical fusions between 2016 and 2024. ¶¶ 329-30. Plaintiff Jane Doe #3 used Defendant's Web Properties from at least 2019 to present to, among other things, submit detailed information about each of her medical conditions, make appointments with her doctors, exchange messages with her doctors, fill out questionnaires requested by her doctors, request referrals for specific health issues, refill her prescriptions, update her medication information and check her medical test results. ¶¶ 327-28. Plaintiff Jane Doe #3 has frequently used Defendant's Web Properties to check test results for her lab tests since June 2016, including MRIs and X-rays of her neck following her cervical fusions. ¶ 331.

Plaintiff John Doe has had a primary care provider within Wellstar from at least 2007 to present. ¶¶ 344 & 346. Plaintiff John Doe submitted information to Defendant's Web Properties about his medical conditions. ¶ 346. Specifically, Plaintiff John Doe used Defendant's Web Properties multiple times per year to, among other things, pay for his medical services and to find local doctors. ¶ 345.

Wellstar never informed patients that their Private Information would be collected and disclosed to third parties like Facebook and Google, and Plaintiffs never consented to the use of their sensitive health information in this fashion. *See,*

*e.g.*, ¶¶ 187-201. Wellstar violated its own privacy policies and online representations that promised Plaintiffs that their personal information would remain secure and protected. ¶¶ 189-92. Defendant's Notice of Privacy Practices assures Plaintiffs that Wellstar is "required by law to protect the privacy of [their] health information." ¶ 189. Defendant also promises patients that any sharing of their health information, other than as explicitly listed, requires written authorization. ¶ 191. And Wellstar's privacy policy does not permit it to use nor disclose Plaintiffs' Private Information for marketing, stating that "we will not use your health information unless you authorize us in writing to: Share any of your psychotherapy notes, if they exist, with a third party; Share any of your health information with marketing companies; or Sell any of your health information." ¶ 192. Notwithstanding these promises, Defendant placed hidden tracking tools on its Web Properties to disclose Plaintiffs' PHI for its own marketing purposes. *See, e.g.*, ¶¶ 193-201.

As a result of Wellstar's unauthorized collection and disclosure of Private Information, Plaintiffs suffered injuries including monetary damage, loss of privacy, unauthorized disclosure and access of Private Information, use of Private Information for advertising purposes, embarrassment, humiliation, frustration and emotional distress, diminution of the value of their Private Information, lost benefit of the bargain, loss of the difference between the amount they paid for healthcare services that included reasonable privacy protections and the value of those services

received without such protections and increased risk of future harm resulting from further unauthorized use and disclosure of information. *See, e.g.,* ¶¶ 412, 428 & 496.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the burden of proof is on the movant. *See, e.g.*, *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (stating that "the court must accept all factual allegations [] as true and take them in the light most favorable to plaintiff") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss should be denied where the complaint alleges "sufficient facts to state a plausible claim[]" *Fed. Trade Comm'n v. Hornbeam Special Situations, LLC*, 391 F. Supp. 3d 1218, 1223 (N.D. Ga. 2019). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545) ("[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element.").

## ARGUMENT

### I. Plaintiffs Well-Pled Allegations Support Their ECPA Claim.

Wellstar claims that Plaintiffs do not allege any facts that Wellstar engaged in an unlawful interception or that contents of an intercepted communication were

improperly disclosed or used by Wellstar. *Compare* MTD at 16, *with* ¶¶ 470-96. In making these arguments, Wellstar ignores recent caselaw finding to the contrary, contradicts Plaintiffs' well-pled allegations and raises factual issues that are not appropriately resolved at the pleading stage.

**A. Plaintiffs Plausibly Allege an Interception.**

First, Plaintiffs describe the process by which their communications with Wellstar through its Web Properties were intercepted and disclosed to third parties. *See, e.g.*, ¶¶ 4-9 & 85-86. Courts routinely hold that the use of source code to simultaneously redirect communications to a third party is an "interception." *See, e.g.*, *Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) (plausibly alleging interception given "multiple allegations that Meta's 'transmission of information through the Pixel is instantaneous' and Meta's code redirects users' communications "simultaneously'"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule."); *Ctr. L. & Consulting, LLC v. Axiom Res. Mgmt., Inc.*, 456 F. Supp. 3d 765, 770 (E.D. Va. 2020) (denying motion to dismiss & explaining that "[o]ther courts that have considered the automatic duplication and forwarding of electronic communications have arrived at the same conclusion"); *In*

*re Grp. Health Plan Litig.*, 2023 WL 8850243, at *6 (finding plaintiffs alleged an interception because the Pixel "contemporaneously and intentionally redirected and disclosed the contents of Plaintiffs' electronic communications to third parties") (cleaned up). In fact, not even Facebook disputes that the Pixel operates as an interception. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("Meta does not dispute that the intentional or interception elements are met").

Here, Plaintiffs allege that Wellstar intentionally installed and configured tracking tools on its Web Properties to intercept patients' communications and identities not for treatment purposes but to disclose the content of those communications to third parties. *See, e.g.*, ¶¶ 57, 76-77, 82-84, 111 & 476-77. The Meta Collection Tools, for instance, contemporaneously redirected patient communications to Facebook every time an action on Defendant's Web Properties. *See, e.g.*, ¶¶ 59-79 & 480. Likewise, the Google Collection Tools disclosed to Google the content of patient communications while Defendant's patients were exchanging communications with Wellstar's Web Properties, which Google then used to target patients with ads based on those communications. *See, e.g.*, ¶¶ 91-111.[5] Thus, Plaintiffs adequately plead an "interception" under the ECPA.

---

[5] Indeed, Defendant is the one that configured the pixels and tracking technologies. to specify what sensitive information it would like to collect from Plaintiffs. *See, e.g.*, ¶¶ 57 & 147-201 (providing a review of Wellstar's Web Properties and screenshots that demonstrate a sample of Defendant's collection of information).

### B. Plaintiffs Describe the Contents of Their Communications That Were Disclosed or Improperly Used.

Second, Plaintiffs specify the contents of their communications that were disclosed to third parties Google and Facebook. Wellstar attempts to reframe Plaintiffs' allegations by contending that they "largely consist of non-substantive interactions with a website, such as actions meant to access the site itself, and URLs." Wellstar's attempt to rewrite the Complaint should be rejected. *Compare* MTD at 17-19, *with, e.g.*, ¶¶ 57, 76-77, 82-84, 111, 153 (keywords of physician searches sent to Meta), 155 (physician profiles sent to Meta), 164-68 (booking of appointments for conditions sent to Meta), 170-174 (pixel installed on MyChart login and bill pay pages), 181-186 (keyword searches sent to Google), & 476-77.

The "content" of a communication under the ECPA is the "substance, purport, or meaning . . . of the communication itself" as opposed to "record information Defendant could have obtained through a security camera at a brick-and-mortar store." A URL that discloses a "search term or similar communication made by the user" constitutes contents. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *3 (N.D. Cal. Sept. 7, 2023) (quoting 18 U.S.C. § 2510(8)); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 948 (N.D. Cal. 2022) (finding that categories of the website, categories that describe the current section of the website, and referrer URL that caused navigation to the current page constituted "content").

*In re Zynga Privacy Litigation* is inapposite. In fact, the court in *Zynga* recognized that certain types of intercepted information constitute "contents," observing: "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents 750 F.3d 1098, 1108-09 (9th Cir. 2014). Even a cursory review of the facts of *Zynga* reveals that the case simply did not involve the type of descriptive URLs as those at issue here. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795–96 (distinguishing *Zynga* and finding "the log-in buttons and the kinds of descriptive URLs [at issue] are 'contents' within the meaning of the statute.").[6]

Plaintiffs' allegations clearly meet the standard for contents. The Complaint alleges that Plaintiffs' communications were duplicated and transmitted to Facebook's and Google's servers including when they logged in or out of the Portal, made, scheduled, or participated in appointments, exchanged communications relating to doctors, treatments, payment information, health insurance information, prescription drugs, prescription side effects, conditions, diagnoses, prognoses or

[6] *Hammerling v. Google LLC* is inapposite as there the court recognized that "the sensitivity of information collected by Google—and the plausibility of the collection of each sort of data—remains unclear." 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022). In contrast, here the health information Defendant collected and disclosed is unquestionably sensitive. *See, e.g.*, ¶¶ 293-96, 311-14, 329-31 & 345-46.

symptoms of health conditions and more. ¶¶ 12, 57, 76-77, 82-84, 88, 111, 149, 153-55, 164-68, 170-74, 181-86, 291-304, 309-22, 327-39, 344-54 & 489.

For example, Plaintiff Jane Doe alleges that she accessed Defendant's Web Properties for healthcare services from Defendant at its direction; used its Web Properties to make appointments, exchange substantive messages, respond to questionnaires, update medical information, and check test results and reviewed Defendant's privacy policies that do not allow the disclosure of her PHI. ¶¶ 291-300. Plaintiff Jane Doe further alleges that Defendant assisted Meta with intercepting her communications, including those that contained PII and PHI and transmitted to Meta her Facebook ID and the Google equivalent. ¶¶ 301-302. Contrary to Wellstar's characterizations, this information is substantive. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795 (rejecting argument that "names of buttons clicked on websites and their associated URLs are not 'content' within the meaning of the [wiretapping] statute"); *Aspen Dental*, 2024 WL 4119153, at *5 (holding that "the URLs at issue include terms entered into search fields and fillable forms[, so t]his is sufficient to plausibly allege that covered 'content' was intercepted.").

### C. The One-Party Exemption Does Not Apply Because Plaintiffs Plausibly Allege that Wellstar Committed a Crime or Tort.

Wellstar next asserts that because the ECPA allows for one-party consent, it cannot intercept its own communications with another party. MTD at 16-17. Defendant misunderstands the party exemption in contending, "[c]laims under the

Wiretap Act alleged against a party under such circumstances are, therefore, not viable as a matter of law." *Id.* at 17. But Wellstar's overly broad position ignores the crime-tort exception to the party-exemption:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication … ***unless such communication is intercepted for the purpose of committing any criminal or tortious act*** in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). Here, the crime-tort exception applies, and Wellstar is *not* shielded from liability.[7]

Plaintiffs allege that Wellstar intercepted their electronic communications for the purpose of violating HIPAA by collecting and disclosing their Private Information including IIHI without consent. *See, e.g.*, ¶¶ 485 & 491. It is a federal crime to knowingly disclose IIHI to third parties, and there are increased penalties when the crime is "committed with the intent to . . . use" the information "for commercial advantage [or] personal gain." ¶ 485(c) (citing 42 U.S.C. § 1320d-6).

District courts nationwide have found that allegations that a healthcare defendant knowingly collects and transmits information that constitutes IIHI in violation of HIPAA are sufficient to invoke the crime-tort exception. For instance,

[7] *See, supra*, Introduction at 2 (collecting healthcare tracking technology cases where courts have sustained ECPA claims).

Judge Engelmayer, in *Cooper*, addressed this argument and explained that "where a covered person intentionally disclosed patients' individually identifiable health information, HIPAA makes such a crime, and indeed imposes enhanced penalties when such was done for, *inter alia*, a 'commercial advantage' or 'personal gain.'" 2024 WL 3586357, at *9 (citing 42 U.S.C. § 1320d-6). *Compare Aspen Dental*, 2024 WL 4119153, at *5 ("Plaintiffs allegations are sufficient to invoke HIPAA for purposes of the ECPA's crime-tort exception."), *with Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (no mention of health information).

Wellstar is a HIPAA-covered entity that encourages patients to use its Web Properties for healthcare services and then uses its platforms to surreptitiously collect and disclose sensitive PHI to Meta, Google and other third parties. *See, e.g.*, ¶¶ 5-6, 24, 54, 89, 390 & 480. Cases nationwide have held a purpose to violate HIPAA is sufficient for the crime-tort exception; similarly, Plaintiffs here allege (i) when they began using Defendant's Web Properties; (ii) the specific health conditions they shared with Defendant; (iii) and the actions they took on Defendant's Web Properties, including communicating with healthcare providers, researching medical concerns and treatments, completing questionnaires, requests prescription refills and referrals, checking medical test results, uploading insurance information and scheduling appointments. *See, e.g.*, ¶¶ 290-96, 309-14, 327-31 & 344-46.

Plaintiffs also allege that their medical information was received by Wellstar and the information disclosed identifies or provides a reasonable basis to identify them. *See, e.g.*, ¶¶ 14-15, 119, 301-304, 319-22, 336-39 & 351-54. Defendant does not dispute that either element of IIHI is met. Plaintiffs allege that Defendant chose to install tracking technologies, partnered with third party platforms and configured the trackers to delineate the precise IIHI and PHI that it wanted to collect and disclose to third parties and, as a result, Plaintiffs were harmed. *Compare* MTD at 21, *with e.g.*, ¶¶ 29-31, 144, 305, 325, 340, 355, 410 & 459. Plaintiffs' allegations demonstrate that the purpose of Defendant's disclosure was to use its patients' data for advertising, marketing and revenue generation without express written consent in violation of HIPAA. *See, e.g.*, ¶¶ 30, 277-89 & 490; *see also Cooper*, 2024 WL 3586357, at *8 (finding allegations "support the inference that Mount Sinai, for commercial ends, intentionally disclosed [IIHI], and thus violated HIPAA, which makes it a crime for a health care provider to disclose [IIHI] for commercial gain").[8]

Wellstar instead relies on outdated case law, decisions without disclosure of PHI and cases where the court did not consider the crime-tort exception. *See* MTD at 17 & 20-22. For example, Wellstar cites *Kurowski v. Rush System for Health*, 659

[8] A commercial purpose does not immunize a defendant where commercial advantage is an element of the crime. *Compare* MTD at 21, *with, e.g.*, *Cooper*, 2024 WL 3586357, at *9 ("Mount Sinai's broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.").

F. Supp. 3d 931, 937 (N.D. Ill. 2023), but fails to mention that the *Rush* Court subsequently concluded that plaintiff's amended complaint was "sufficient to invoke the HIPAA exception-to-the-party-exception" and denied a motion for judgment on the pleadings on that exact issue. *See* 2023 WL 8544084, at *3 (granting leave to amend) & 2024 WL 3455020, at *6 (holding defendant is not entitled to judgment as a matter of law). And in *T.D. v. Piedmont Healthcare, Inc.*, the court improperly dismissed the ECPA claim without analyzing whether the crime-tort exception applied. 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (relying on an outdated version of *Rush* and other courts that failed to apply the crime-tort exception).[9]

Moreover, in *Sussman v. American Broadcasting Companies, Inc.*, the Ninth Circuit affirmed the district court's dismissal on a motion for *summary judgment* because the defendant news organization's airing of secretly recorded footage was not unlawful and there was no factual evidence that defendant intended to invade plaintiff's privacy. *See* 186 F.3d 1200, 1202 (9th Cir. 1999). And in *Caro v. Weintraub*, the court held that plaintiff alleged that defendant intended to commit the tort of intrusion upon seclusion which "occurs through the simple act of the recording itself and therefore cannot satisfy the Wiretap Act's requirement of a separate and independent tortious intent." 618 F.3d 94, 101 (2d Cir. 2010). But here,

---

[9] Since then, Plaintiffs in *Piedmont* filed a Motion for Reconsideration. *See* 1:23-cv-05416, ECF No. 48.

Defendant's alleged disclosure is a criminal violation of HIPAA and, without the benefit of discovery, the allegations of an intent to violate HIPAA are sufficient to establish the crime-tort exception under the ECPA. *See, infra* §ID.

Plaintiffs further allege that Wellstar intercepted their communications to commit additional, separate tortious and criminal acts, including invasion of privacy and breach of fiduciary duty. *See, e.g.*, ¶¶ 485-90. Other courts have found such allegations properly plead tortious intent. *See, e.g., Walgreen Co.*, 2024 WL 2263395, at *15-16 (finding tortious intent was pled).

**D. Factual Questions Should Not Be Resolved on a Motion to Dismiss.**

Finally, whether Wellstar had criminal or tortious intent is a factual question to be decided on the basis of a full evidentiary record. *See, e.g.*, *Cooper*, 2024 WL 3586357, at *8 (explaining that defendant's purpose can be established in discovery); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *7–8 ("[D]etermination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual undertaking."); *Kurowski*, 2023 WL 8544084, at *3 (explaining that "Kurowski lacks the direct access to what occurs in the background on Rush's web properties, and at Facebook, Google, and Bidtellect, that she would need to provide further details supporting her claim of improper disclosures of personal health information"). Precisely because Plaintiffs "may be able to show" that the crime-tort exception applies at a later, fact-intensive stage, courts have held that it is

inappropriate to dismiss a suit at the pleading stage based on the single-party consent defense. *See, e.g.*, *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005) (even where defendant "obviously consented to the recording, [] that does not justify dismissing the suit. Complaints need not anticipate or attempt to defuse potential defenses").

**II. Plaintiffs Sufficiently Allege their Common Law Claims.**[10]

**A. Plaintiffs Allege a Plausible Intrusion upon Seclusion Claim.**

Intrusion upon seclusion "involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns." *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 705 (1991). A plaintiff "must show a physical intrusion which is analogous to a trespass; however, this physical requirement can be met by showing that the defendant conducted surveillance on the plaintiff or otherwise monitored plaintiff's activities." *Sitton v. Print Direct., Inc.*, 312 Ga.App. 365 (2011) (cleaned up). Wellstar intruded on Plaintiffs' privacy by intentionally incorporating and using Google and Meta Collection Tools to secretly transmit PII and PHI to third parties for commercial gain. *See* ¶¶ 222 & 387-90.

Defendant falsely contends that Plaintiffs solely base their claim on the acts of third parties, but Defendant does not get to re-write facts considered true in a motion to dismiss. Plaintiffs clearly allege an intrusion on *Wellstar's* part through its targeted acts, including installing tracking tools inside its Portal and installing the

[10] Plaintiffs address their well-supported common law damages in §III *infra*.

Meta Pixel and Google Analytics on its Website. ¶¶ 147-151, 175. Plaintiffs plead it was Wellstar that caused Plaintiffs' communications to be duplicated and surreptitiously disclosed to third parties to be used for targeted advertising and other commercial purposes. ¶¶ 176-86 & 193-201. Courts at the forefront of this legal issue are largely in agreement that this conduct states a claim for invasion of privacy. *See In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *3 (finding installation of the Pixel and resulting transmission of patient healthcare data a "highly offensive" "intrusion"); *Cousin v. Sharp Healthcare*, 2023 WL 8007350, at *3 (S.D. Cal. Nov. 17, 2023) (finding the same in denying motion to dismiss claims); *Doe v. Coffee Reg. Med. Ctr., Inc.*, No. SUV2023000627 (Ga. Super. Ct. Coffee County Sept. 6, 2024) (denying motion to dismiss invasion of privacy).

Defendant also resorts to victim-blaming and insists that no intrusion can exist because Plaintiffs "voluntarily" shared information via its Web Properties. MTD at 16. However, Plaintiffs only shared their information for a very specific, limited purpose—to communicate healthcare needs with their doctors—not to have their PHI monitored by and transmitted to third parties. As Wellstar patients, Plaintiffs plead that they were aware of Wellstar's duty of confidentiality when they sought medical services and had a reasonable expectation of privacy in the Private Information they disclosed via Wellstar's Web Properties. ¶¶ 243-48.

Plaintiffs reasonably held their expectation because Wellstar is a covered entity subject to HIPAA's Privacy Rule and because Wellstar expressly represented and promised in its Privacy Notice that it would never share their information for marketing purposes without Plaintiffs' written authorization. ¶¶ 192, 446-448, 453. Plaintiffs cannot be said to have "voluntarily" provided their Private Information for such purposes where Defendant made affirmative representations that it was *not* sharing or selling it. *See, e.g.*, *Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (finding despite voluntarily giving PHI to defendant for healthcare purposes, "Plaintiff alleges that she was unaware that her information was being sent to third parties and that she could not make an informed choice to disclose information to unknown parties ... [t]herefore, Plaintiff has plausibly alleged an intentional intrusion"); *Barbour v. John Muir Health*, 2023 WL 2618967, at *10 (Cal.Super. Jan. 5, 2023) (similar); *Doe v. Bon Secours Mercy Health*, 2021 WL 9939010, at *2 (Ohio Com.Pl. Nov. 22, 2021) (similar).

**B. Plaintiffs Plead All Elements for Breach of Fiduciary Duty.**

To state a plausible claim for breach of fiduciary duty under Georgia law, Plaintiffs must allege: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Schinazi v. Eden,* 338 Ga. App. 793, 798 (2016). Wellstar has a well-recognized fiduciary duty as a healthcare provider and covered entity under HIPAA to safeguard its patients' Private

Information. As detailed in the Complaint, Wellstar breached that duty and thereby harmed Plaintiffs and putative Class Members. *See, e.g.*, ¶¶ 397-402.

"Fiduciary duties and obligations are owed by those in confidential relationships, *i.e.*, relationships 'where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith[] ....'" *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 606 (1998) (quoting O.C.G.A. § 23-2-58). A confidential relationship that gives rise to a fiduciary duty "may be created by law, contract, or the facts of a particular case." *Douglas v. Bigley*, 278 Ga.App. 117, 120 (2006) (citation omitted). Because "a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of [this] relationship is generally a factual matter for the jury to resolve." *Id*. (quotation marks & citation omitted).

Healthcare providers owe a fiduciary duty to their patients to keep Private Information secure. Defendant cites inapplicable case law to suggest that no fiduciary duty was owed to Plaintiffs, simply because a fiduciary duty may not arise in ***every*** healthcare provider-patient relationship context. MTD at 19. *Cox v. Athens Regional Medical Center, Inc.* found that a fiduciary duty did not exist with respect to *pricing* for medical care, where there was no allegation that defendant, specifically in setting its rates, "exercised controlling influence over the will, conduct, or interest

of appellants, or held a relationship of mutual confidence." 279 Ga. App. 586, 593 (2006). Here, Plaintiffs assert that a fiduciary duty exists in a wholly different context—a relationship involving the safeguarding of PHI. Where a healthcare provider maintains a website and patient portal for electronic storage and conveyance of health information, certainly a "relationship of mutual confidence" exists between the patient and healthcare provider to keep that information secure.

In *Purvis v. Aveanna Healthcare, LLC*, Judge May noted that the patient-plaintiffs' relationship with the defendant healthcare company was different from standard consumer transactions as it "necessarily entailed the patient-Plaintiffs sharing and disclosing private health information with Defendant that was akin to the health information that would be communicated to a physician when receiving medical care." 563 F. Supp. 3d 1360, 1383 (N.D. Ga. 2021) (finding that plaintiffs sufficiently alleged a fiduciary duty to keep patients' private information secure); *see also Bishop v. Shorter Univ., Inc.*, 2015 WL 13753710, at *8 (N.D. Ga. June 4, 2015) ("the fact that Defendant involved itself in the provision of medical care of Plaintiffs could suggest a confidential relationship."); *Allen v. Novant Health, Inc.,* 2023 WL 5486240, at *5 (M.D.N.C. Aug. 24, 2023), (denying motion to dismiss breach of fiduciary duty); *Doe v. Coffee Reg. Med. Ctr., Inc.*, No. SUV2023000627 (Ga. Super. Ct. Coffee County Sept. 6, 2024) (same).

The same is true here as Plaintiffs plead the special relationship that existed between them and Wellstar (as their healthcare provider), how Wellstar had a duty to keep any Private Information entrusted to it confidential and how it breached that duty by disclosing that Private Information to Facebook and Google. *See* ¶¶ 18-20 & 398-400. Wellstar further breached this duty by violating its own Privacy Notice and failing to notify Plaintiffs that their Private Information was being monitored and used by third parties. ¶¶ 89, 196-97 & 399. But for Wellstar's breach, the damages to Plaintiffs would not have occurred. ¶ 400-401.

**C. Plaintiffs Allege a *Prima Facie* Claim for Negligence.**

Wellstar owed a duty to Plaintiffs to not disclose their PHI to third parties without consent and its breach of those duties caused Plaintiffs harm. ¶¶ 237 & 385. The essential elements of a negligence claim are (i) the existence of a legal duty, (ii) breach of that duty, (iii) a causal connection between defendant's conduct and plaintiff's injury, (iv) and damages. *Stadterman v. Southwood Realty Co*., 361 Ga. App. 613, 615 (2021) (citation omitted).

The growing framework of data privacy jurisprudence in Georgia supports Plaintiffs' negligence claims. *See Doe v. Coffee Reg. Med. Ctr., Inc*., No. SUV2023000627 (Ga. Super. Ct. Coffee County Sept. 6, 2024) (denying motion to dismiss invasion of privacy, negligence, breach of contract, breach of fiduciary duty, breach of confidence, bailment and unjust enrichment); *Purvis*, 563 F. Supp. 3d at

1366-71 (upholding negligence where plaintiff alleged unauthorized disclosure of patients' data was a foreseeable risk). *Purvis* also held that it was "common sense" that "when patients . . . are required to turn over PII and PHI as a condition of medical care . . . the entity receiving that information has some baseline obligation to adopt reasonable precautions to guard against known or reasonably foreseeable threats to the security of that information." *Id*. at 1370; *see also Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1220 (11th Cir. 2023) (upholding claim because defendant "still owes a duty of care to those with whom it has as special relationship.").

This District has subsequently (and frequently) reiterated the point that foreseeability of harm can inform a common law duty to keep PHI and PII confidential and a breach of that duty gives rise to a plausible claim for negligence. *See, e.g.*, *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 2022 WL 1122841, at *8; *Briggs*, 2024 WL 519722, at *8; *Tracy*, 667 F. Supp. 3d at 1284. In each of these cases, the courts also found causation and damages. *Id*. Here, Plaintiffs allege foreseeability of the specific harm suffered—unauthorized disclosure of their Private Information to third parties—based on Wellstar's custom installation of the tracking technologies onto its Web Properties. *See, e.g.*, ¶¶ 405-07, 410, 420, 426 & 454.

**D. Plaintiffs Adequately Allege a Claim for Negligence Per Se.**

Under Georgia law, violation of a statute or regulation that serves as a standard of conduct constitutes negligence per se. *See, e.g., Pulte Home Corp.*, 322 Ga. App.

699, 705-06 (2013). A plaintiff must show that he or she is within the class of persons the statute was intended to protect and the statute was intended to protect against the harm suffered. *See, e.g., Amick v. BM & KM, Inc.,* 275 F. Supp. 2d 1378, 1382 (N.D. Ga. 2003). Negligence per se claims are cognizable even if the predicate statute contains no private right of action because they create a legally cognizable duty. *See, e.g.*, *Jenkins v. Wachovia Bank, N.A.*, 314 Ga. App. 257, 259, *rev'd sub nom. Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162 (2013), and *opinion vacated in part*, 325 Ga. App. 376 (2013) (federal statute lacked private right of action but still established duty to support negligence per se under OCGA § 51–1–6 ).

Furthermore, Georgia federal district courts have held that HIPAA and the FTC Act can provide a statutory duty for a negligence per se claim, even if the underlying statute does not itself provide a private right of action.[11] *See, e.g.*, *In re Arby's*, 2018 WL 2128441, at *9 (allowing negligence *per se* claim based on violations of the FTCA, "a federal statute for which there is no private right of action"); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1176 (N.D. Ga. 2019) (same); *Tracy*, 667 F. Supp. 3d at 1286 (similar);

[11] Defendant's citations stand only for the proposition that a "plaintiff cannot proceed under the FTC Act alone" because there is no private right of action. *Brooks v. Westlake Portfolio Mgmt.*, 2024 WL 484822, at *4 (N.D. Ga. Jan. 16, 2024). Plaintiffs here have pleaded that the federal statute merely creates the *duty*; it is OCGA § 51-1-6 that creates the right of action under which Plaintiffs may bring suit.

*Covington*, 2023 WL 5167366, at *9 (same); *Purvis*, 563 F. Supp. 3d at 1374- 76 (same, plus finding a duty derived from HIPAA);

Plaintiffs assert a negligence per se claim premised on Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices. The failure to maintain reasonable data security measures to safeguard confidential patient information is an unfair practice prohibited by the Act. *See, e.g.*, *F.T.C. v. Wyndham Worldwide Corp*., 799 F.3d 236, 240 (3d Cir. 2015). Plaintiffs allege Wellstar violated Section 5 by not having reasonable data security, that they are within the class the section was intended to protect and that the section was meant to protect against the harm that occurred. ¶¶ 424-27. The FTC has expressly warned hospital systems and telehealth providers about privacy and security risks from online tracking technologies. ¶ 239. Such allegations properly state a claim for negligence per se under Section 5.

### E. Plaintiffs Sufficiently State Claims for Breach of Either an Implied or an Express Contract.

"In Georgia, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co*., 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015). To prevail on a breach of contract claim, the plaintiff must plead and prove mutual assent. *See BDI Laguna Holdings, Inc. v. Marsh*, 301 Ga. App. 656, 664 (2009).

Plaintiffs sufficiently identify the subject matter of, and the promises contained in, the implied contract. Plaintiffs allege that the contract arose when they provided their Private Information to Wellstar subject to a privacy policy that promised to protect Plaintiffs' information. ¶¶ 410-11. Such allegations are sufficient to establish mutual assent to an implied contract. *See, e.g.*, *Walters v. Kimpton Hotel & Rest. Grp., LLC*, 2017 WL 1398660, at *2 (N.D. Cal. Apr. 13, 2017) (plaintiff "plausibly alleged the existence of an implied contract arising from [defendant's] privacy policy, which states that [defendant] is 'committed' to safeguarding customer privacy and personal information. To the extent this commitment creates an enforceable promise, the promise is a voluntary duty not imposed by law and constitutes valid consideration."); *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015), *aff'd sub nom.*, 2018 WL 3060098 (3d Cir. June 20, 2018) (denying motion to dismiss implied contract claim).

On breach of express contract, Defendant incorrectly states that Plaintiffs fail to allege facts that suggest the existence of a contract. MTD at 28. Plaintiffs adequately plead the Privacy Policy is a contract that was formed when they received services from, or otherwise provided PHI and PII to Wellstar, such as when they made appointments, exchanged messages with their doctors, filled out questionnaires required by their doctors, refilled prescriptions, checked medical test results and more. *See, e.g.*, ¶¶ 292, 310, 314, 328, 330 & 345. Moreover, Plaintiffs

allege that Wellstar's promises were independent of its legal duties under HIPAA. ¶ 444. Courts are admittedly divided on whether privacy policies are standalone contracts, but the better-reasoned cases hold that they are. *See, e.g.*, *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 325-27 (E.D.N.Y. 2005) ("stand-alone privacy statement" could form basis of contract between airline and customers who made flight reservations); *Meyer v. Christie*, 2007 WL 3120695, at *4 (D. Kan. Oct. 24, 2007) (privacy policy impliedly part of bank's loan offer). Wellstar is a healthcare entity and requires its patients to provide PHI to provide care. When patients provide such information to Wellstar, the hospital receives valuable consideration and patients reasonably expect their information will be protected.

Finally, Defendant argues that Plaintiffs fail to adequately allege—for either type of contract—that the parties "assent[ed] to the same thing in the same sense, and their minds [met] as to all the terms. MTD at 26. Plaintiffs were Defendant's patients. As discussed, the course of conduct inherent in the relationship between a medical provider and patient implies a contract to keep PHI confidential. *See* ¶ 433; *see also Gilbert v. BioPlus Specialty Pharm. Servs., LLC*, 2023 WL 3555006 at *3 (M.D. Fla. Mar 3, 2023). Plaintiffs adequately allege mutual assent.

**F. Plaintiffs State a Strong Claim for Unjust Enrichment.**

In Georgia, "unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment

unless compensated." *Brooks*, 107 F. Supp. 3d at 1295. To prevail on a claim for unjust enrichment, a plaintiff must prove (i) that it conferred a benefit on defendant and (ii) that equity requires defendant to compensate for that benefit. *Id*.

In related Pixel cases, unjust enrichment claims often overcome Rule 12(b)(6) motions. In *Salem Health Hospital and Clinics*, the court declined to dismiss unjust enrichment with more stringent elements than Georgia's: "(1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." 2024 WL 3970796, at *7. Because plaintiffs alleged that "the benefit conferred was medical information of patients; that Defendant took affirmative steps to collect it; and that it would be unjust for Defendant to retain the benefit from selling this information to advertisers[,]" the court held "[t]his amounts to a plausible claim for unjust enrichment." *Id*. *See also Mekhail*, 2024 WL 1332260, at *12 (similar).[12]

Defendant contends Plaintiffs do not plead Defendant received any benefit from Plaintiffs' Private Information. But Plaintiffs allege Defendant utilized and configured tracking tools to harvest information for impermissible purposes, such as bolstering its marketing capabilities and enhancing its bottom line, by using protected data to build targeted advertisements in collaboration with unauthorized

[12] Other courts are in accord. *See, e.g.*, *Doe v. Tenet Healthcare Corp.,* 2024 WL 1756075, at *5 (D. Mass. Apr. 23, 2024) (similar); *In re Grp. Health Plan Litig*., 709 F. Supp. 3d 707, 715 (D. Minn. 2023) (similar).

third parties. ¶¶ 255-63. The information at issue here is not mere browsing information, but identifying information and PHI, which has actual economic value. ¶¶ 263-75. In exchange for disclosing its patients' Private Information, Defendant is compensated by third parties in the form of "free" enhanced advertising services and access to extremely targeted marketing on those platforms that is not otherwise available without sharing such sensitive data. ¶¶ 255-61. Defendant bartered Plaintiffs' PHI without consent in exchange for those advertising services despite promising it would not sell their PHI or share it for marketing purposes. ¶ 192.

Defendant argues that Plaintiffs received a "benefit" in return for conveying their PHI to Defendant by being allowed to browse Defendant's Website. MTD at 31. But Plaintiffs provided their Private Information in exchange for *medical treatment that expressly included data privacy for their PHI*. *See* ¶¶ 443-50, 455.

Lastly, Defendant relies on *In re Nickelodeon Consumer Privacy Litigation*, which held that "it simply is not reasonable for a consumer – regardless of age – to use the internet without charge and expect compensation because a provider of online services has monetized that usage." MTD at 31 (citing 2014 WL 3012873, at *19 (D.N.J. July 2, 2014)). By contrast, here, Plaintiffs allege the details of Defendant's use of tracking tools to monetize Plaintiffs' legally protected PHI without required authorization, not mere "online activity." *See* ¶¶ 290-357. Plaintiffs had a reasonable expectation that when providing PHI to their trusted medical

provider, including in the Portal, that information would be used for medical care, not to save Defendant from having to pay for advertising.

## III. Plaintiffs Adequately Plead Damages for All Claims.

Plaintiffs adequately plead the following categories of damages to support each cause of action. Defendant's labeling of Plaintiffs' damages as "conclusory" and selective citation to the Complaint fails to account for the allegations of the Complaint as a whole. Construed in the light most favorable to Plaintiffs, their allegations indicate sufficient evidence of injury can be produced.

### A. Plaintiffs Sufficiently Plead Loss of Privacy Damages.

Plaintiffs' allegations regarding the theft of their sensitive personal data are sufficient to allege damages. *See, e.g.*, *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *6 (N.D. Cal. May 6, 2021) ("Plaintiffs adequately allege damages, including 'the loss of control over the use of their identity, harm to their constitutional right to privacy, ... and privacy injuries associated with having their sensitive personal and financial information disclosed.'") (citation omitted); *Flores-Mendez v. Zoosk, Inc.*, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021) ("[P]laintiffs adequately allege damages in the form of loss of privacy with respect to highly sensitive information and risk of embarrassment."); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *6 ("Plaintiffs alleged loss of privacy, mental anguish, diminished value of private information, and other forms of harm are cognizable.")

(cleaned up). Here, the Complaint clearly alleges loss of privacy damages. *See, e.g.*, ¶¶ 4, 7, 12, 29, 86, 89, 157, 168, 175, 184, 201, 254, 265-75, 281, 305, 323, 340, 355, 391-93, 411, 412-14, 428, 437, 459 & 492.

**B. Plaintiffs Allege Diminished Value of Their Private Information.**

Plaintiffs have also suffered compensable damages measured by the loss of value of their Private Information. Courts have held that the diminished value of sensitive health or personal information supports common law claims in pixel tracking cases. *See, e.g.*, *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *6; *Gay*, 2024 WL 4203263, at *7. Courts have found similarly in other data privacy contexts. *See, e.g., Brown v. Google, LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (plaintiffs lost money when Google took "valuable data" and "received no money in return"); *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 802-804 (N.D. Cal. 2022) (explaining valuable marketplace for consumer data and concluding that consumers adequately alleged information obtained by Facebook constituted "lost money or property"); *In re Facebook Priv. Litig.,* 572 F. App'x 494 (9th Cir. 2014) (finding damages for breach of contract and fraud where plaintiffs alleged harm "both by the dissemination of their personal information and by losing the sales value of that information") The inherent value of Plaintiffs' Private Information is also the reason that it was disclosed in the first place. Such action

allowed Wellstar to barter that information to third parties for advertising and marketing services. *See, e.g.*, ¶¶ 3, 16-17, 23, 27, 30, 83, 279-82 & 465. [13]

**C. Plaintiffs Allege They Did Not Receive the Benefit of Their Bargain.**

Courts have recognized that damages for lost benefit of the bargain are recoverable in the privacy context for common law claims. *See, e.g.*, *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *5 (N.D. Cal. Feb. 12, 2024) (plaintiffs alleged cognizable harm under "the benefit of the bargain theory"). In *Gay v. Garnet Health*, a hospital pixel case, Judge Román found lost benefit of the bargain damages cognizable where plaintiffs alleged they "did not receive the full value of their purchased services" because defendant materially misrepresented its services—in particular, "its privacy and security policy regarding management of patient health information" where defendant "does not inform patients of its actions in transmitting information from Defendant's Website to Facebook." 2024 WL 4203263, at *7.

Here, Plaintiffs allege that they would have refrained from entrusting Wellstar with their Private Information had they known of Wellstar's intentions to share it

[13] In deeming Plaintiffs' damages "conclusory," Wellstar cites *Everhart v. Colonial Pipeline Co.* 2022 WL 3699967, at *2-4 (N.D. Ga. July 22, 2022). There, the court found that plaintiffs "fail to provide any factual support" for the diminished value of their PII. *Id*. But here, Plaintiffs have described the robust personal data market where value is based on whether the individual's data is already in the marketplace. ¶¶ 255-75. Here, Plaintiffs' Private Information was indeed, held privately by Plaintiffs and certainly not in the marketplace until Wellstar sent it to Facebook and Google so that it could be monetized by others. *See*, *e.g.*, ¶¶ 299, 276-82, 288-89. *Also see Briggs*, 2024 WL 519722, at *6 (diminished PII value sufficiently pled).

with third parties. ¶ 435. Plaintiffs would not have given Wellstar their Private Information knowing Wellstar would disclose their PHI to unauthorized third parties without notifying and compensating Plaintiffs, and they lost the benefit of their bargain when it did. *See, e.g.*, ¶¶ 29, 412, 455 & 459. Unlike what this Court found lacking in the damages pled in *Provost v. Aptos*, Plaintiffs *expressly plead* that they *relied on* Wellstar's representations in its Privacy Notice that Wellstar *would not share* their Private Information with unauthorized third parties. *Compare,* 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) (quotation to Privacy Policy insufficient when plaintiff, "does not allege she read it or relied on it prior to making her online purchase..."), *with* ¶¶ 298-300, 316-18, 333-35, 348-50 (specific reliance).

**D. The Economic Loss Rule Does Not Apply.**

Georgia's economic loss rule does not apply where the defendant breaches a duty "imposed by law or arising from a special relationship." *Johnson v. 3M*, 563 F. Supp. 3d 1253 (N.D. Ga. 2021), *aff'd sub nom*. *Johnson v. 3M Co.*, 55 F.4th 1304 (11th Cir. 2022) (citing Ga. Code Ann. § 51-1-11(a)). Plaintiffs do not allege that they have suffered only economic harm. *See* ¶¶ 402 & 428. Nor do they allege the breach of solely contractual duties—the Complaint specifically alleges that Wellstar owed patients duties that arise from law, including those duties that arise from HIPAA and FTCA. ¶¶ 22, 207, 422 & 444. The economic loss rule does not apply.

### E. Plaintiffs Allege Other Compensable Harm.

Regarding damages of emotional distress, embarrassment, humiliation and loss of enjoyment of life, these damages are well supported in tort in Georgia. *See, e.g.*, *David C. Joel, Att'y at L., P.C. v. Chastain*, 254 Ga. App. 592, 596 (2002) (mental distress damages may be recovered without proof of physical injury where the claim is based on intentional misconduct). These "intangible" harms are real and compensable under the torts Plaintiffs allege, where Wellstar took their intimate medical secrets and gave them to advertising giants so they could be targeted based on confidential communications with their doctors.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Wellstar's Motion to Dismiss, grant leave to amend to address any pleading deficiencies and award other relief as equity and justice require.[14]

DATED: September 27, 2024

Respectfully submitted,

/s/ *Andrew R. Tate*

[14] Under Rule 15, "the court should freely give leave to amend when justice so requires." *Rivera v. Stroup*, 2019 WL 13227185, at *1 (N.D. Ga. Oct. 18, 2019) (quoting FED. R. CIV. P. 15(a)(2)) (cleaned up). While Plaintiffs contend sufficient facts are pled to support each cause of action and associated damages, should the Court be persuaded to dismiss any claim, Plaintiffs respectfully request leave to file a Second Amended Complaint, after guidance from the Court. Plaintiffs submit that this is a reasonable request, particularly where courts nationwide analyzing similar pleadings have done so with varying levels of specificity in the pleadings.

**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
Andrew R. Tate (GA Bar # 518068)
235 Peachtree St. NE, Suite 400
Atlanta, GA 30303
(404) 282-4806
atate@peifferwolf.com

Brandon M. Wise*
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
(314) 833-4825
bwise@peifferwolf.com

**ALMEIDA LAW GROUP LLC**
David S. Almeida*
Britany A. Kabakov*
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com
britany@almeidalawgroup.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger*
Glen L. Abramson**
Alexandra M. Honeycutt**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com
gabramson@milberg.com
ahoneycutt@milberg.com

*Counsel for Plaintiffs & the Putative Class*

* *pro hac vice* admission
** *pro hac vice to be sought*

## <u>LR 5.1(C) FONT COMPLIANCE CERTIFICATION</u>

The undersigned counsel certifies that the within and foregoing was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

This 27th day of September, 2024.

**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**

*<u>/s/ Andrew R. Tate</u>*

*Counsel for Plaintiffs & the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September 2024, I caused a true and correct copy of the foregoing motion to be filed with the Clerk of the Court via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matter.

**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**

*/s/ Andrew R. Tate*

*Counsel for Plaintiffs & the Proposed Class*