**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| JANE DOE, JANE DOE #2, JANE DOE # 3, and JOHN DOE, individually, and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br>WELLSTAR HEALTH SYSTEM, INC.,<br>Defendant. | Docket No. 1:24-cv-01748-JPB |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Robert M. Brennan
Georgia Bar No. 079798
PARKER, HUDSON, RAINER & DOBBS, LLP
303 Peachtree Street NE
Suite 3600
Atlanta, GA 30308
Phone: 404-523-5300
Fax: 404-522-8409
bbrennan@phrd.com

*Counsel for Defendant Wellstar Health System, Inc.*

Scott S. Christie (*pro hac vice*)
New Jersey Bar No. 037901989
Matthew A. Sklar (*pro hac vice*)
New Jersey Bar No. 013662008
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07172
Phone: (973) 622-4444
Fax: (973) 624-7070
schristie@mccarter.com
msklar@mccarter.com

*Counsel for Defendant Wellstar Health System, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................ 2

A. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THE VIABILITY OF THEIR WIRETAP CLAIM ............................................. 2

1. No Contents of any Communications Have Been Disclosed or Improperly Used ....................................................................... 3

2. The Tortious or Criminal Act Exception is Inapplicable ..................... 4

B. PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD ANY OF THEIR STATE LAW CLAIMS ..................................................... 8

C. PLAINTIFFS' ATTEMPT TO FASHION ADEQUATE DAMAGES THROUGH THEIR OPPOSITION SHOULD BE DISREGARDED .......... 17

CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................10

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 05, 2023)........................9

*BDI Laguna Holdings, Inc. v. Marsh*,
301 Ga. App. 656 (2009) ..............................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................6

*Briggs v. N. Highland Co.*,
No. 1:22-CV-03640-SCJ, 2024 WL 519722 (N.D. Ga. Feb. 9, 2024)...............11

*Brooks v. Branch Banking & Tr. Co.*,
107 F. Supp. 3d 1290 (N.D. Ga. 2015).....................................................14, 15

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ...............................................................................5

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023)..................................................................9

*Cox v. Athens Reg'l Med. Ctr., Inc.*,
279 Ga. App. 586, 631 S.E.2d 792 (2006) ........................................................10

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001)..............................................................2

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ...........................................................................16

*Doe v. Bon Secours Mercy Health*,
No. A2002633, 2021 WL 9939010 (Ohio Com.Pl. Nov. 22, 2021) ....................9

*Doe v. Coffee Reg. Med. Ctr., Inc.*,
No. SUV2023000627 (Ga. Super. Ct. Coffee County Sept. 6, 2024)..................9

*Doe v. Tenet Healthcare Corp.*,
No. CV 23-12978-PBS, 2024 WL 1756075 (D. Mass. Apr. 23, 2024) ....................14

*Eiber Radiology, Inc. v. Toshiba Am. Med. Sys.*,
673 Fed. Appx. 925 (11th Cir. 2016)....................20

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
No. 1:17-MD-2800-TWT, 2022 WL 1122841 (N.D. Ga. Apr. 13, 2022) ....................11

*Everhart v. Colonial Pipeline Co.*,
No. 1:21-CV-3559-MHC, 2022 WL 3699967 (N.D. Ga. July 22, 2022) ....................17

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................13

*Gaucher v. U.S. Bank*,
No. 1:12-CV-00591-WSD, 2012 WL 13013640 (N.D. Ga. Oct. 29, 2012) ....................13

*Gen. Elec. Co. v. Lowe's Home Centers, Inc.*,
279 Ga. 77, 608 S.E.2d 636 (2005) ....................19

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*
, 806 F.3d 125, 145 (3d Cir. 2015) ....................4

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)....................9, 14

*Jenkins v. Wachovia Bank, N.A.*,
314 Ga. App. 257 (2012), *rev'd sub nom. Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162 (2013) ....................12

*Jenkins v. Wachovia Bank, N.A.*,
325 Ga. App. 376 (2013) ....................12

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)....................2

*M.R. v. Salem Health Hosps. & Clinics*,
No. 6:23-CV-01691-AA, 2024 WL 3970796 (D. Or. Aug. 28, 2024)....................9, 14



ME1 50716807v.1

*Mekhail v. N. Mem'l Health Care*,
No. 23-CV-00440, 2024 WL 1332260 (D. Minn. Mar. 28, 2024)......................14

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. CV 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ............................6

*In re Nickelodeon Consumer Priv. Litig.*,
No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014) .......................15

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-CV-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024) ..........................................................................................................2

*Norman v. Xytex Corp.*,
310 Ga. 127 (2020) ..............................................................................................9

*Provost v. Aptos, Inc.*,
No. 1:17-CV-02120-ELR, 2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) ...................................................................................................17, 18

*Purvis v. Aveanna Healthcare, LLC*,
563 F. Supp. 3d 1360 (N.D. Ga. 2021).........................................................10, 11

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 5:24-CV-00330-ODW (SPX), 2024 WL 3730609 (C.D. Cal. Aug. 7, 2024) ......................................................................................2, 8

*Santoro v. Tower Health*,
No. CV 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024)............................6

*Scoggins v. Floyd Healthcare Mgmt. Inc.*,
No. 14-CV-00274, 2016 WL 11544908 (N.D. Ga. Aug. 30, 2016)...................12

*Shofner v. CitiMortgage, Inc.*,
No. 11-CV-0254, 2011 WL 13229645 (N.D. Ga. Dec. 12, 2011) ......................14

*Shofur LLC v. Fitzpatrick*,
No. 1:20-CV-01267-SCJ, 2021 WL 8648884 (N.D. Ga. Sept. 8, 2021) ..........................................................................................................15

*Smith v. United States*,
873 F.3d 1348 (11th Cir. 2017) ..........................................................................11



ME1 50716807v.1

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................................................................4

*T.D. v. Piedmont Healthcare, Inc.,*
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....................................................................*passim*

*Tracy v. Elekta, Inc.*,
667 F. Supp. 3d 1276 (N.D. Ga. 2023)....................................................................11

*Warthaw v. S. E. Pers. Leasing Inc.*,
2016 WL 11817177 (N.D. Ga. Sept. 19, 2016)....................................................................18

*Welborn v. Internal Revenue Serv.*,
218 F. Supp. 3d 64 (D.D.C. 2016)....................................................................17

*Wells Fargo Bank, N.A. v. Jenkin*s,
293 Ga. 162 (2013) ....................................................................12

*Williford v. Bayview Loan Servicing, LLC*,
No. 1:16-CV-4268-ELR-LTW, 2017 WL 11151639 (N.D. Ga. July 14, 2017) ....................................................................12

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................................................................3

**Statutes**

18 U.S.C. § 2511(2)(d)....................................................................2

O.C.G.A § 51-1-6....................................................................11, 12

**Other Authorities**

45 C.F.R. § 160.103 ....................................................................6

## INTRODUCTION

Nothing in Plaintiffs' opposition adequately counters the arguments set forth in Wellstar's motion to dismiss.[1] Tellingly, Plaintiffs essentially ignore that Judge Thrash recently dismissed a case based on a nearly identical speculative theory of alleged disclosure of patient information. That case – *T.D. v. Piedmont Healthcare, Inc*., Case No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) – is instructive and should guide the Court in this case.[2] In contrast, Plaintiffs' downplaying of that case and reliance upon non-controlling law should not be credited. The outcome in the *Piedmont Heathcare* case – dismissal – is warranted here. Plaintiffs and the members of the putative class have no viable claim and this case should not proceed past the pleading stage.

Plaintiffs spend considerable effort asserting that their claims have been sufficiently pleaded. But in doing so, they only highlight that their allegations largely consist of little more than the recitation of the elements of the asserted claims accompanied by conclusory and irrelevant statements. Moreover, recognizing a significant deficiency, Plaintiffs also attempt to cobble together a damages theory to

---

[1] "Plaintiffs" collectively refers to Jane Doe, Jane Doe # 2, Jane Doe # 3, and John Doe.

[2] Indeed, Plaintiffs' counsel in this case are intimately familiar with Judge Thrash's decision since they also are counsel for plaintiffs in the *Piedmont Heathcare* case.



ME1 50716807v.1

save their claims from dismissal. But that, too, is insufficient. As this Court has recognized and should continue to recognize, the types of allegations that Plaintiffs raise are not actionable and Plaintiffs have not demonstrated that they have been harmed. The Court should dismiss all of the claims in the Amended Complaint with prejudice since Plaintiffs already have had an opportunity to amend.

## ARGUMENT

### A. Plaintiffs Have Failed to Demonstrate the Viability of Their Wiretap Claim

Plaintiffs cannot credibly contest that, as a party to the purported communications at issue, Wellstar could not have unlawfully intercepted those communications under the Wiretap Act. *See* 18 U.S.C. § 2511(2)(d). That alone is dispositive and justifies dismissal. *See, e.g., R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2024 WL 3730609, at *2 (C.D. Cal. Aug. 7, 2024) (dismissing federal Wiretap Claim while noting that "[c]ourts across the country . . . agree that a hospital is a party to the communication where it uses a pixel to track activity on its website"*); Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) ("It is clear from Plaintiff's complaint that Defendant was a party to Plaintiff's website communications. . . . To the extent that Plaintiff alleges that Defendant surreptitiously recorded its own communications with Plaintiff, the Court finds that

the one-party consent exemption applies."); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 937-38 (N.D. Ill. 2023); *accord Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (party did not "'intercept' the communication within the meaning of the Wiretap Act" because it was the intended recipient and used no other device for interception).

But in an attempt to avoid that inevitability, Plaintiffs insist that they have adequately pleaded that the "contents" of their communications have been intercepted and that Wellstar loses the immunity of the party-exemption to the Wiretap Act due to the crime-tort exception. However, neither argument is correct.

1. No Contents of any Communications Have Been Disclosed or Improperly Used

Plaintiffs disregard that for the Wiretap Act, "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Consequently, materials that may have been transmitted alongside that intended message – including personally identifiable information – are not the "contents" of a communication. *See id*. at 1107. And even if a recipient of such materials could deduce certain information beyond the intended message, that is not akin to the disclosure of the "contents" of a communication. *See id.* at 1108.

Plaintiffs' allegations require an enormous logical leap for one to believe that any "contents" were intercepted – putting aside that Wellstar, as a party to the communications at issue cannot have intercepted them. Although Plaintiffs claim that various interactions with Wellstar's Web Properties are reflective of or relate to protected information (*see* Dkt. No. 27 at 21-22), they fail to explain how that information was transmitted in an understandable format to third parties. And when Plaintiffs' allegations are stripped away from their conclusory statements, all that remains are skeletal hypotheticals unsupported by factual allegations. That is insufficient. Plaintiffs have not adequately alleged facts demonstrating that anything that supposedly has been intercepted is equivalent to communication "contents."

2. <u>The Tortious or Criminal Act Exception is Inapplicable</u>

As explained in Wellstar's opening brief, there likewise is nothing in Plaintiffs' Amended Complaint even suggesting that the tortious or criminal exception to the one-party consent rule of the Wiretap Act applies.

In order to avoid dismissal, Plaintiffs must, among other things "plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 145 (3d Cir. 2015) (citation omitted); *see Sussman v. Am.*

*Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious" (citation omitted)). They fail to meet that standard as well.

Despite the fact that Wellstar could not have intercepted the communications at issue as a party to those communications, Plaintiffs have not asserted how Wellstar's purported bad acts are distinct from "the act of interception itself." *Caro v. Weintraub,* 618 F.3d 94, 101 (2d Cir. 2010). Indeed, Plaintiffs' contention that "Wellstar intercepted [Plaintiffs'] electronic communications for the purpose of violating HIPAA by collecting and disclosing their Private Information including IIHI [individually identifiable health information] without consent" (Dkt. No. 27 at 23) is akin to arguing that Wellstar intercepted communications for the purpose of intercepting them. Such circular logic does not support Plaintiffs' claims. Moreover, Plaintiffs assume, without supporting factual allegations, that the purported interception itself was made specifically to commit a criminal or tortious act with intent to harm. *Caro,* 618 F.3d 94 at 100. (one party to the conversation must "deliberately seek[] to harm the other participant through the information intercepted."). Nothing in the Amended Complaint, other than threadbare

conclusory assertions, suggests that Wellstar intended to violate HIPAA, for example, or commit any crime or tort for that matter.

And although Plaintiffs imply that simply alleging a violation of HIPAA is sufficient for the purpose of triggering the crime-tort exception, that is not accurate. Rather, information purportedly intercepted and transmitted must, among other things, fall "within the scope of HIPAA's definition of 'individually identifiable health information.'"[3] *Santoro v. Tower Health*, No. CV 22-4580, 2024 WL 1773371, at *4 (E.D. Pa. Apr. 24, 2024). Generic claims about the supposed transmission of communications regarding "past, present, or future conditions;" "requests for information about specific [providers] and locations;" and "information about specific health conditions, treatments, and medications" are insufficient. *See id.*; *see also Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. CV 22-4674, 2023 WL 7017734, at *3 (E.D. Pa. Oct. 10, 2023) (dismissing Federal Wiretap Act claim in the absence of allegations that "any specific test results,

[3] It appears that Plaintiffs are referring to the definition of IIHI in 45 C.F.R. § 160.103 when incorrectly claiming that "Defendant does not dispute that either element of IIHI is met." (Dkt. No. 27 at 25). Wellstar has not agreed with any of Plaintiffs' allegations or conceded that Plaintiffs' characterizations are correct. Rather, in moving to dismiss, Wellstar has highlighted some of the deficiencies with Plaintiffs' claims with the understanding that the Court will assume – but not conclude – that factual allegations in the Amended Complaint are true only for the purpose of resolving the motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

diagnoses, or sensitive messages were intercepted or improperly disclosed"). The categories of information that Plaintiffs claim were sent to third parties (*see* Dkt. No. 27 at 20-22, 24-25) are no different from those that the *Murphy* court identified as falling outside the ambit of individually identifiable health information. Plaintiffs simply fail to allege any facts – beyond at a speculative level – showing that the substantive contents of any communications were transmitted to Meta or any other third party and that a HIPAA violation occurred. *See Santoro*, 2024 WL 1773371, at *5 (rejecting argument that "specifics were immaterial because essentially any use of the website necessarily involves the Meta Pixel intercepting and transmitting HIPAA-protected health information).[4]

Plaintiffs' passing reference to other supposed tortious and criminal acts does not save their Wiretap Act claims from dismissal. As noted in Wellstar's opening brief, the other claims Plaintiffs raise – which are themselves deficient – do not

---

[4] In particular, the amendments to the complaint included numerous references to Google as a third party in receipt of protected communications, yet Plaintiffs fail to claim that any specific content whatsoever was disclosed to Google by Wellstar. Indeed, the content of paragraphs 181 through 186 of the Amended Complaint – referenced by Plaintiffs in their opposition – do not appear to relate to the activities of any of the Plaintiffs, but instead relate to some unidentified user who claims to have run a search on one of Wellstar's public websites, presumably with the goal of generating content for Plaintiffs' pleading. (*See* Dkt. No. 20 at ¶ 181-186). In any event, the generic information purportedly relayed to Google through that type of search is not the content of a communication for the purpose of the Wiretap Act.

reflect that a tort or crime has been committed or trigger the exception at issue. And finally, Plaintiffs' request that the Court refrain from dismissing the Wiretap Act claims to allow for discovery should be denied. Plaintiffs have an obligation to meet the pleading standards, and their failure to do so – especially after having amended the complaint previously – should not be tolerated. Claims should not be permitted to proceed based on a hunch, and it would be unfair to force Wellstar to bear the cost, disruption, and expense associated with a defense against a claim based on such speculation. Multiple courts – including the Northern District of Georgia – have dismissed similar claims, and Plaintiffs have failed to demonstrate that a different outcome is warranted here. *See, e.g.*, *Piedmont Healthcare*, 2024 WL 3972984, at *4; *Prime Healthcare*, 2024 WL 3730609, at *2.

**B. Plaintiffs have Failed to Adequately Plead Any of their State Law Claims**

In addition to failing to demonstrate that their Wiretap Act claims should proceed, Plaintiffs also have failed to establish that any of their remaining state law claims should survive dismissal. Notably, the same type of claims were brought before this court in the *Piedmont Healthcare* case, and all were dismissed at the pleading stage by Judge Thrash. The claims in this case suffer from the same deficiencies as claims in the *Piedmont Healthcare* case, so dismissal is required here as well.

1. Invasion of Privacy

With respect to invasion of privacy, Plaintiffs have failed to plead critical elements of such a claim. As this court has recognized, "[t]here is no intrusion upon privacy when a patient voluntarily provides personally identifiable information and protected health information to his or her healthcare provider." *Piedmont Healthcare*, 2024 WL 3972984, at *2. That is exactly what Plaintiffs and the purported class have alleged here. And as a result, these claims, too, should be dismissed.

When the irrelevant bluster and aggressive rhetoric is stripped away, instead of acknowledging this inevitability, Plaintiffs principally rely on case law from states other than Georgia, which are inconsequential to the resolution of this motion.[5] And Plaintiffs' apparent reliance on a Georgia state trial court order – which they did not provide to Wellstar and the Court – is insufficient. (*See* Dkt. No. 27 at 29 (citing *Doe v. Coffee Reg. Med. Ctr., Inc.*, No. SUV2023000627 (Ga. Super. Ct. Coffee

---

[5] *See In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 714 (D. Minn. 2023) (applying Minnesota law); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023) (applying California law); *M.R. v. Salem Health Hosps. & Clinics*, No. 6:23-CV-01691-AA, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024) (applying Oregon law); *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *8 (Cal. Super. Jan. 05, 2023) (applying California law); *Doe v. Bon Secours Mercy Health*, No. A2002633, 2021 WL 9939010, at *4 (Ohio Com.Pl. Nov. 22, 2021) (applying Ohio law).

County Sept. 6, 2024) and noting that it supposedly concerns the denial of a motion to dismiss an invasion of privacy claim)).[6] In addition to failing to explain why that order – which concerns different parties and allegations – should guide this Court, Plaintiffs also fail to acknowledge that Georgia state courts apply a different, more lenient standard when evaluating whether to dismiss claims. *See Norman v. Xytex Corp*., 310 Ga. 127, 130-131 (2020).[7] But when the appropriate standard is applied, it is clear that their claims for invasion of privacy are simply insufficient "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2. Breach of Fiduciary Duty

Similarly, Plaintiffs attempt to salvage their claims for breach of fiduciary duty also is misplaced Although they intimate that a fiduciary duty always exists between a healthcare provider and patients or potential patients, Plaintiffs ignore that such a duty is not absolute and does not extend to all facets of a relationship between a patient and his or her healthcare provider. *See, e.g., Cox v. Athens Reg'l Med. Ctr., Inc.*, 279 Ga. App. 586, 593, 631 S.E.2d 792, 798 (2006) (declining to "recognize a

[6] A copy of the order referenced by Plaintiffs appears to be available on the docket for *Piedmont Healthcare* (Case No. 1:23-cv-05416-TWT; Dkt. No. 48-3).

[7] Plaintiffs cannot rely on *Doe v. Coffee Reg. Med. Ctr., Inc*. for support for their other claims for the same reasons.

fiduciary relationship between a hospital and a patient with respect to pricing"). Even so, the existence of a fiduciary duty alone does not justify allowing a breach of fiduciary duty claim to proceed past the pleadings stage. As the *Piedmont Healthcare* case recognizes, such a claim requires "damage proximately caused by the breach." 2024 WL 3972984, at *3 (citation omitted). And conclusory damages like those identified by Plaintiffs here are insufficient, thereby warranting dismissal. *See id.* As explained further below, nothing in Plaintiffs' opposition justifies a different outcome.[8]

3. Negligence

Plaintiffs' other state law claims also are insufficient, despite their assertions. With respect to negligence, Plaintiffs fail to establish that alleged noncompliance with industry standards amounts to a breach of a duty of care owed to Plaintiffs or to any other potential class member in connection with the specific allegations in the Amended Complaint. *See Smith v. United States*, 873 F.3d 1348, 1353 (11th Cir. 2017). Their reliance on data breach cases – which concern an alleged failure to guard against external intrusions – is inapt, and those cases do not stand for the

[8] Plaintiffs rely heavily on *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1383 (N.D. Ga. 2021) when arguing that their breach of fiduciary duty claims are sufficiently pleaded. However, *Purvis* not only concerned different factual circumstances, but also did not address the sufficiency of purported damages.

principle that any electronic transmission of PHI or PII may give rise to a negligence claim in all circumstances, as Plaintiffs appear to suggest. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2022 WL 1122841, at *7 (N.D. Ga. Apr. 13, 2022); *Briggs v. N. Highland Co.*, No. 1:22-CV-03640-SCJ, 2024 WL 519722, at *7 (N.D. Ga. Feb. 9, 2024); and *Tracy v. Elekta, Inc.*, 667 F. Supp. 3d 1276, 1285 (N.D. Ga. 2023).

4. Negligence Per Se

Plaintiffs also fail to adequately address the deficiencies of their negligence per se claims. Despite Plaintiffs' assertions, they cannot rely upon conjecture to bring a negligence per se claim under O.C.G.A § 51-1-6. "[U]nderlying an actionable claim . . . is the existence of a legal duty," and "there must be the alleged breach of a legal duty with some ascertainable standard of conduct." *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162, 164 (2013). Plaintiffs fail to demonstrate that HIPAA, the FTCA, or anything else supports a negligence per se claim here. *Williford v. Bayview Loan Servicing, LLC*, Case No. 1:16-CV-4268-ELR-LTW, 2017 WL 11151639, at *5 (N.D. Ga. July 14, 2017), *report and recommendation adopted*, 2017 WL 11151638 (N.D. Ga. Aug. 7, 2017) (injured person must fall

within the class that legislation underlying negligence per se claim was meant to protect).[9]

5. Breach of Implied or Express Contract

Plaintiffs also have failed to establish that their claims for breach of contract (express or implied) should not be dismissed. For their breach of contract claims, again, Plaintiffs primarily rely upon the law of states other than Georgia, which is not controlling here. (*See, e.g.*, Dkt. No. 27 at 37-38). Nothing in their opposition illustrates that the requirements for an express or implied contract under Georgia law,

---

[9] Plaintiffs' reliance on the decision of the Court of Appeals of Georgia in *Jenkins v. Wachovia Bank* for the principle that "[n]egligence per se claims are cognizable even if the predicate statute contains no private right of action because they create a legally cognizable duty" is unmeritorious. (*See* Dkt. No. 27 at 35 (citing *Jenkins v. Wachovia Bank, N.A*., 314 Ga. App. 257, 259 (2012), *rev'd sub nom. Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162 (2013), and opinion vacated in part, 325 Ga. App. 376 (2013)). Not only was the portion of the judgment embodied within that decision relating to O.C.G.A § 51-1-6 reversed (*see Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. at 162), but the text that Plaintiffs rely upon also was explicitly vacated (*see Jenkins v. Wachovia Bank, N.A.,* 325 Ga. App. at 376 ("We therefore vacate Division 1 of our opinion in Jenkins v. Wachovia Bank, supra, 314 Ga. App. 257, 724 S.E.2d 1, and in its place adopt as our own the Supreme Court's opinion."). Moreover, Plaintiffs disregard that this Court has previously concluded that "under Georgia law, a plaintiff may not pursue a negligence per se claim under O.C.G.A § 51-1-6 if the statute or regulation that supposedly gives rise to the legal duty does not provide a civil remedy." *Scoggins v. Floyd Healthcare Mgmt. Inc.*, Case No. 14-CV-00274, 2016 WL 11544908, at *27 (N.D. Ga. Aug. 30, 2016).

including mutual assent and consideration, have been met. *See BDI Laguna Holdings, Inc. v. Marsh*, 301 Ga. App. 656, 664 (2009); *Gaucher v. U.S. Bank*, Case No. 1:12-CV-00591-WSD, 2012 WL 13013640, at *5 (N.D. Ga. Oct. 29, 2012). Plaintiffs' belated claims that a privacy policy or some unilateral unexpressed expectations about the treatment of certain information could give rise to a contract are not supported by law or by the allegations pleaded. And even Plaintiffs concede that there is case law holding that privacy policies are not standalone contracts, which significantly undermines their argument that their breach of contract claims should be preserved. *See* Dkt. No. 27 at 38. *See also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610–11 (9th Cir. 2020) (concluding that privacy policy is not a contract). Plaintiffs have presented no basis for this Court to conclude that a contract – implied or express – existed between Wellstar and any of the Plaintiffs or purported class members.[10] And in the absence of a contract, there can be no breach.

[10] Moreover, Plaintiffs have failed to allege any particular contractual provision that Wellstar breached, which mandates dismissal of their breach of contract claims. *See Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015). Likewise, since Plaintiffs' breach of contract claims are the basis for the breach of the covenant of good faith and fair dealing claim, that claim must be rejected due to the absence of any underlying contract. *See Shofner v. CitiMortgage, Inc.*, Case No. 11-CV-0254, 2011 WL 13229645, at *7 (N.D. Ga. Dec. 12, 2011). Plaintiffs have not challenged this conclusion in their opposition.

6. Unjust Enrichment

There furthermore is nothing in Plaintiffs' opposition indicating that their unjust enrichment claim should move forward. Plaintiffs continue their habit of relying on law from other states, which have no bearing on whether they have pleaded a sufficient claim for unjust enrichment under Georgia law.[11] But again, under the requirements of Georgia law, no unjust enrichment claim has been adequately pleaded. Despite Plaintiffs' conclusory assertions, they have not sufficiently pleaded that a benefit has been conferred to Wellstar that requires it to compensate Plaintiffs or any of the purported class members under equitable principles. *See Brooks*, 107 F. Supp. 3d at 1298. Plaintiffs' constrained and myopic view of *In re Nickelodeon Consumer Priv. Litig.*, Case No. CIV.A. 12-07829, 2014 WL 3012873, at *19 (D.N.J. July 2, 2014) should not be credited, and the reasoning behind that case is applicable here: It is unreasonable for Plaintiffs and the purported class members to assert that they would have expected some kind of compensation as a result of their use of Wellstar's websites even if Wellstar somehow monetized

[11] *See* Dkt. No. 27 at 29 (citing *M.R. v. Salem Health Hosps. & Clinics*, No. 6:23-CV-01691-AA, 2024 WL 3970796, at *7 (D. Or. Aug. 28, 2024) (applying Oregon law); *Doe v. Tenet Healthcare Corp.*, No. CV 23-12978-PBS, 2024 WL 1756075, at *5 (D. Mass. Apr. 23, 2024) (applying Massachusetts law); *Mekhail v. N. Mem'l Health Care*, No. 23-CV-00440, 2024 WL 1332260, at *13 (D. Minn. Mar. 28, 2024) (applying Minnesota law); and *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 715 (D. Minn. 2023) (applying Minnesota law).

that usage. Plaintiffs and the class members benefited from the use of those sites – presumably by at least through the gathering of medical information and the obtaining of medical treatment. And nothing in the Amended Complaint or Plaintiffs' opposition reflects that Wellstar, in turn, would or should have been aware that it was receiving something through that use that warranted compensation to the user. *See Shofur LLC v. Fitzpatrick*, No. 1:20-CV-01267-SCJ, 2021 WL 8648884, at *5 (N.D. Ga. Sept. 8, 2021) (dismissing unjust enrichment claim when defendant did not know the purported "benefit being bestowed upon it by the plaintiff" (citation omitted); *see also Piedmont Healthcare*, 2024 WL 3972984, at *4.

7. <u>No Damages</u>

And significantly, in keeping with the guidance provided by Judge Thrash, Plaintiffs' claims of breach of fiduciary duty, negligence (including negligence per se) and breach of contract (express or implied) are insufficient due to a failure to plead damages and their unjust enrichment claims are similarly deficient due to a failure to plead enrichment by Wellstar. *See id.* at *3-4. There is simply nothing in the Amended Complaint reflecting that Plaintiffs or any of the purported class members have been damaged or are due some type of compensation as a result of Wellstar's alleged acts.

**C. Plaintiffs' Attempt to Fashion Adequate Damages Through Their Opposition Should be Disregarded**

Recognizing that they have not adequately articulated how they have been damaged as a result of Wellstar's purported conduct, Plaintiffs attempt to cobble together viable theories via their opposition brief. But nothing cogent is presented in the Amended Complaint, and Plaintiffs cannot salvage their deficient claims through speculative argument. As this Court has recognized, a failure to plead actionable damages serves as a valid ground for dismissing claims like those presented by Plaintiffs here. *See Piedmont Healthcare*, 2024 WL 3972984, at *3-4.

Plaintiffs claim that some unarticulated and unquantifiable damages result from a supposed loss of privacy relating to the alleged "theft of their sensitive personal data." (Dkt. No. 27 at 41-42). But while pointing to law that does not bind this Court, Plaintiffs disregard the specific allegations relating to that type of damages. Those allegations are conclusory, and insufficient to support any cause of action. Indeed, Plaintiffs fail to acknowledge that such speculative harm has even been deemed insufficient for the purposes of standing. *See Dinerstein v. Google, LLC*, 73 F.4th 502, 514-16 (7th Cir. 2023) (supposed damages stemming from an interest in privacy are insufficient for standing purposes); *see also Everhart v. Colonial Pipeline Co.*, No. 1:21-CV-3559-MHC, 2022 WL 3699967, at *2 (N.D. Ga.

July 22, 2022) (recognizing that a diminution in the value of private information is not a cognizable injury).

Relatedly, Plaintiffs' claim that actionable damages arise from a supposed and hypothetical diminished value of their private information should be rejected. Although they assert that other courts "have held that the diminished value of sensitive health or personal information supports common law claims in pixel tracking cases" and "in other data privacy contexts," (Dkt. No. 27 at 42), they disregard that this Court has reached the opposite conclusion. *See Everhart v. Colonial Pipeline Co.*, No. 1:21-CV-3559-MHC, 2022 WL 3699967, at *2 (N.D. Ga. July 22, 2022) (rejecting argument that damage to and diminution of in the value of PII qualified as injuries); *Provost v. Aptos, Inc.*, No. 1:17-CV-02120-ELR, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) ("hypothetical diminution of value" of personal information was insufficient). Other courts agree. *See Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value" (collecting cases)). The Court should reject Plaintiffs' apparent request to disregard the law of this Court and other well-reasoned precedent.

Likewise, Plaintiffs' assertion that purported damages arise due to a "lost benefit of the bargain" should not be credited. Notwithstanding the irrelevant case

law cited by Plaintiffs, that type of damages theory is implausible. *See Provost*, 2018 WL 1465766, at *4-5 (concluding that "Plaintiff's allegations of overpayment and lost benefit of the bargain are insufficient" while noting that no facts were alleged making it plausible that the Plaintiff paid some price that both parties "understood would be allocated toward protecting customer data" (citations omitted)). Plaintiffs' belated and *post hoc* claims that they would not have given Wellstar their private information had they know of its alleged activities is not only highly speculative, but is untethered to any quantifiable amount of damages.

Insofar as Plaintiffs' claim that damages flowing from "other compensable harm" are sufficient, they are mistaken. (Dkt. No. 27 at 45). Plaintiffs' own characterizations illustrate that such purported damages again are speculation and largely hypothetical. And although such harm may give rise to damages in limited circumstances, when, like here, the corresponding allegations "are more conclusory than factual," they cannot be relied upon to avoid dismissal. *See Warthaw v. S. E. Pers. Leasing Inc.*, 2016 WL 11817177, at *8 (N.D. Ga. Sept. 19, 2016), *report and recommendation adopted*, 2016 WL 11817179 (N.D. Ga. Oct. 19, 2016) (citation

omitted). *See also Piedmont Healthcare*, 2024 WL 3972984, at *3 (describing such damages theories as "untenable").[12]

Despite Plaintiffs' protestations, their conclusory damages allegations are deficient and, at the very least, support dismissal of their breach of fiduciary duty, breach of contract, unjust enrichment, and negligence and negligence per se claims as elucidated by Judge Thrash. *See Piedmont Healthcare*, 2024 WL 3972984, at *4.

## CONCLUSION

This case is a part of a coordinated, nation-wide effort to extract money from not-for-profit healthcare providers that may have used the services of third parties – like Facebook and Google – to help improve patient access and modernize this country's healthcare systems. But there is no basis for cases like this one when the law does not provide for relief and the Plaintiffs have failed to adequately plead any

[12] Plaintiffs' assertion that the economic loss rule is inapplicable also should be rejected. (Dkt. No. 27 at 44). That doctrine was raised in response to Plaintiffs' negligence-based claims. (*See* Dkt. No. 23-1 at 29-30). As noted herein and in Wellstar's opening brief, Plaintiffs have failed to articulate any damages whatsoever stemming from Wellstar's purported acts, which is fatal to their negligence-based claims. But additionally, Plaintiffs cannot use tort law to recover economic losses in the absence of personal injury or property damage. And despite their characterizations, Plaintiffs have not adequately pleaded injury to their person or property, so they have no recovery under tort law. *See Gen. Elec. Co. v. Lowe's Home Centers, Inc.*, 279 Ga. 77, 78, 608 S.E.2d 636, 637 (2005). For the reasons noted herein, Plaintiffs have failed to demonstrate that the doctrine is inapplicable due to some duty or claim that arises outside of contract or as a consequence of a special relationship.

actionable claim. Dismissal at the outset is justified under such circumstances. When the claims presented by Plaintiffs are properly analyzed under controlling law – as opposed to non-binding law from other jurisdictions – it is apparent that all of Plaintiffs' claims are fatally deficient. Nothing in Plaintiffs' opposition weighs against that outcome.

Accordingly, the Court should dismiss Plaintiffs' amended complaint in its entirety, and that dismissal should be with prejudice since Plaintiffs already have had an opportunity to amend their complaint to cure their pleading deficiencies. *See*, *e.g.*, *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys.*, 673 Fed. Appx. 925 (11th Cir. 2016).

Dated: October 18, 2024

Respectfully submitted,

/s/ Robert M. Brennan

Robert M. Brennan
**PARKER, HUDSON, RAINER & DOBBS, LLP**
303 Peachtree Street NE
Suite 3600
Atlanta, GA 30308
Phone: 404-523-5300
Fax: 404-522-8409
bbrennan@phrd.com

Scott S. Christie (*pro hac vice*)
Matthew A. Sklar (*pro hac vice*)
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry St.
Newark, NJ 07172
Phone: (973) 622-4444
Fax: (973) 624-7070
schristie@mccarter.com
msklar@mccarter.com

*Counsel for Defendant Wellstar Health System, Inc.*

# CERTIFICATE OF COMPLIANCE

In compliance with N.D. Ga. R. 7.1D, I certify that the foregoing D**EFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** has been prepared in conformity with N.D. Ga. R. 5.1. This brief was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch. This brief is proportionately spaced and is no longer than (20) pages.

*/s/ Robert M. Brennan*
Robert M. Brennan

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record in this action.

Date: October 18, 2024.

*/s/ Robert M. Brennan*
Robert M. Brennan