# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JANE DOE, JANE DOE # 2, JANE DOE # 3, and JOHN DOE, *on behalf of themselves and all others similarly situated*,<br><br>    Plaintiffs,<br><br>  v.<br><br>WELLSTAR HEALTH SYSTEM, INC.,<br><br><br>    Defendant. | Case No. 1:24-cv-01748-JPB |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Britany A. Wessan
David S. Almeida
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
(708) 529-5418
britany@almeidalawgroup.com
david@almeidalawgroup.com

Andrew Tate
**PEIFFER WOLF CARR KANE CONWAY & WISE LLP**
235 Peachtree Street NE, Suite 400
Atlanta, GA 30303
(404) 282-4806
Fax: 504-608-1465
atate@peifferwolf.com

Brandon Wise
**PEIFFER WOLF CARR KANE CONWAY & WISE LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
(314) 833-4827
bwise@peifferwolf.com

Carolyn Cuneo
**MILBERG PLLC**
800 South Gay Street, Suite 1100
Knoxville, TN 37929
(866) 252-0878
cjcuneo@milberg.com

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................... 1

II.  PURPOSE................................................................................................. 2

III.    BACKGROUND ..................................................................................... 3

   A.   Summary of the Settlement Terms ...................................................... 5

     1. Settlement Class ............................................................................ 5

     2. Settlement Fund............................................................................. 6

     3. Settlement Class Member Benefits ............................................... 6

     4. Release.......................................................................................... 7

     5. Notice and Administration ............................................................ 7

     6. Attorneys' Fees, Expenses, and Service Awards .......................... 8

     7. Opt-Outs and Objections............................................................... 8

IV.    LEGAL STANDARD.............................................................................. 9

V.  ARGUMENT ......................................................................................... 10

   A.  The Court Should Preliminarily Certify the Settlement Class. ................... 10

     1. Numerosity. ................................................................................. 10

     2. Commonality. .............................................................................. 10

     3. Typicality..................................................................................... 12

     4. Adequacy..................................................................................... 12

     5. Rule 23(b)(3) Is Satisfied. .......................................................... 13

       a. Common Questions of Law and Fact Predominate. ............................. 13

       b. A Class is the Superior Method of Adjudicating this Case.................... 14

B.   The Proposed Settlement Warrants Preliminary Approval. ........................ 15

1. Plaintiffs and Class Counsel Have Adequately Represented the Class. ..... 16

2. The Settlement Was Negotiated at Arm's Length. .................................... 16

3. The Relief Provided to the Class Is Adequate. .......................................... 17

4. The Settlement Treats Class Members Equitably. ..................................... 19

5. The *Bennett* Factors Confirm That Preliminary Approval Is Appropriate. 20

C.   The Proposed Notice Program Satisfies Rule 23 and Due Process and Should Be Approved. ............................................................................................ 22

D.   Proposed Class Counsel Should Be Appointed. .......................................... 24

E.   The Court Should Approve a Settlement Schedule and Set a Final Approval Hearing. ..................................................................................................... 24

VI.    CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................... 10, 12, 13

*Bennett v. Behring Corp.,*
  737 F.2d 982 (11th Cir. 1984) .......................................................................9, 15

*Cole v. Stateserv Med. of Fla., LLC,*
  2018 WL 3860263 (M.D. Fla. June 19, 2018) ....................................................17

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
  258 F.R.D. 545 (N.D. Ga. 2007) ...................................................... 10, 12, 15, 21

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ...........................................................................................22

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) .....................................................19

*Frasco v. Flo Health, Inc.,*
  349 F.R.D. 557 (N.D. Cal. 2025) .......................................................................20

*Goodman v. Columbus Reg'l Healthcare Sys.,*
  2024 WL 2963441 (M.D. Ga. June 12, 2024)......................................................15

*In re Advocate Aurora Health Pixel Litig.,*
  740 F. Supp. 3d 736 (E.D. Wis. 2024) .................................................... 11, 18, 20

*In re Checking Account Overdraft Litig.,*
  275 F.R.D. 654 (S.D. Fla. 2011) .....................................................................9, 15

*In re Checking Account Overdraft Litig.,*
  2020 WL 4586398 (S.D. Fla. Aug. 10, 2020)......................................................19

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
  999 F.3d 1247 (11th Cir. 2021).............................................................. 9, 10, 20

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
   2020 WL 256132 (N.D. Ga. Mar. 17, 2020)............................................... 12, 20

*In re LoanCare Data Sec. Breach Litig.,*
  2025 WL 2604518 (M.D. Fla. Sept. 9, 2025) .....................................................23

*In re Novant Health, Inc.,*
  2024 WL 3028443 (M.D.N.C. June 17, 2024).............................................. 18, 21

*In re Terazosin Hydrochloride,*
  220 F.R.D. 672 (S.D. Fla. 2004) ........................................................................13

*In re TikTok, Inc., Consumer Priv. Litig.,*
  565 F. Supp. 3d 1076 (N.D. Ill. 2021)................................................................14

*i*

*In re TikTok, Inc., Consumer Priv. Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022).................................................................11
*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ..........................................................................9
*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ......................................................................17
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) .........................................................................................22
*Ponzio v. Pinon*,
   87 F.4th 487 (11th Cir. 2023)...........................................................................15
*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*,
   601 F.3d 1159 (11th Cir. 2010).........................................................................14
*Sherwood v. Horizon Actuarial Servs., LLC*,
   2023 WL 12214962 (N.D. Ga. Sept. 21, 2023) ............................................ 19, 23
*Sims v. Univ. of Toledo Med. Ctr.*,
   2024 WL 5410602 (Ohio Ct. Cl. Nov. 13, 2024)...............................................17
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................... 10, 11
*Waters v. Cook's Pest Control, Inc.*,
   2012 WL 2923542 (N.D. Ala. July 17, 2012)....................................................19
*Wilcopolski v. First Advantage Form I 9 Compliance, LLC*,
   2025 WL 3520308 (N.D. Ga. May 19, 2025) ................................. 11, 15, 21, 23
*Wolff v. Cash 4 Titles*,
   2012 WL 5290155 (S.D. Fla. Sept. 26, 2012)....................................................19

Statutes

28 U.S.C. § 1715(d) ...............................................................................................24
18 U.S.C. § 2511(1) ................................................................................................4

Rules

Fed. R. Civ. P. 23 ........................................................................... *passim*

Pursuant to Rule 23(e), Plaintiffs Jane Doe, Jane Doe #2, Jane Doe #3, and John Doe,[1] on behalf of themselves and all others similarly situated, respectfully move the Court for preliminary approval of the proposed settlement of this class action.[2] Plaintiffs request that the Court grant the Motion and enter a Preliminary Approval Order: (a) preliminarily certifying the Settlement Class, appointing Plaintiffs as Settlement Class Representatives for the Settlement Class, and appointing Class Counsel as counsel for the Settlement Class; (b) preliminarily approving the proposed Settlement as appearing sufficiently fair, adequate, and reasonable to warrant the issuance of the Class Notice; (c) approving the proposed Notice plan as meeting the requirements of Rule 23 and due process; and (d) granting any related relief as described herein.

## I.    INTRODUCTION

After years of litigation and hard-fought arm's-length negotiations, the Parties have reached a proposed Settlement to resolve this action arising from Plaintiffs' allegations that Defendant disclosed information about Plaintiffs and Class Members, including personally identifiable information and protected health

---

[1] Unless otherwise indicated, capitalized terms refer to and have the same meaning as those set forth in the Settlement Agreement ("Settlement Agreement" or "S.A."), which is attached as **Exhibit 1**.

[2] Defendant supports preliminary approval of the settlement agreement and does not oppose Plaintiffs' Motion.

information to third parties, such as Meta Platforms, Inc. d/b/a Meta and Google LLC via Tracking Technologies installed on Defendant's Website and Patient Portal. The Settlement provides a non-reversionary $4,250,000 common fund for an estimated Settlement Class of approximately 870,000 individuals.

Plaintiffs and Class Counsel believe the Settlement is an excellent result for the Settlement Class. Preliminary approval is warranted because: (1) the Settlement Class satisfies Rule 23(a) and 23(b)(3); (2) the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and the *Bennett* factors; (3) the proposed Notice program constitutes the best notice practicable under the circumstances; and (4) the proposed timeline and procedures for claims, opt-outs, objections, and final approval comport with Rule 23 and due process. For the reasons set forth below, Plaintiffs respectfully request that the Court grant this Motion.

## II.   PURPOSE

Rule 23(e) identifies the procedure for courts to consider and ultimately approve the settlement of an action that will bind class members. First, the parties must provide the court with sufficient information about the terms of the settlement to enable the Court to determine whether to give notice of the proposed settlement to the class. Fed. R. Civ. P. 23(e)(1)(A). Notice should be ordered if the parties provide information showing that the court will likely be able to approve the

settlement proposal and certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i) and (B)(ii).

Approval is likely if, after a final hearing, the court can conclude the settlement as proposed is fair, reasonable, and adequate considering whether: (i) Plaintiffs and class counsel have adequately represented the class; (ii) the proposal was negotiated at arm's length; (iii) the relief to the class is adequate; and (iv) the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A-D). Thus, for preliminary approval purposes, the court conducts a preliminary evaluation of the fairness and adequacy of the settlement to determine whether there is good reason to schedule a full fairness hearing and order notice of the settlement to the class. *See* MANUAL FOR COMPLEX LITIGATION (Fourth) (hereinafter "Manual") § 21.632, at 320-21. This examination is typically "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *Id.*

## III.    BACKGROUND

This lawsuit arises from Plaintiffs' allegations that Wellstar Health System, Inc. installed Google and Meta Collection Tools on its public website (https://www.wellstar.org/, the "Website") and its "Wellstar MyChart" patient portal (available at mychart.wellstar.org, "MyChart" or the "Patient Portal", collectively with the Website, the "Web Properties"). Plaintiffs allege that Wellstar disclosed

3

information about Plaintiffs and Class Members, including PII and PHI, to third parties through the Tracking Technologies. *See* Class Counsel Declaration attached hereto as **Exhibit 2** ("Joint Decl.") ¶ 2.

On April 23, 2024, Plaintiff Jane Doe commenced this putative class action lawsuit by filing a Complaint against Wellstar in the United States District Court for the Northern District of Georgia captioned *Doe v. Wellstar Health System, Inc.*, which was assigned case number 1:24-cv-01748. *Id.* ¶ 1. An Amended Complaint was filed on August 2, 2024, naming Jane Doe #2, Jane Doe #3, and John Doe as additional plaintiffs. *Id.* ¶ 4. The Amended Complaint asserted claims for (i) invasion of privacy; (ii) breach of confidence; (iii) negligence; (iv) negligence per se; (v) breach of implied contract; (vi) breach of contract; (vii) unjust enrichment, and (viii) violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) *et seq.* ("ECPA"). *Id.*

On August 30, 2024, Defendant filed a motion to dismiss, which was fully briefed on October 18, 2024. *Id.* ¶ 5. On August 21, 2025, the Court granted in part and denied in part the motion to dismiss; Plaintiffs' claims for unjust enrichment and violations of the ECPA were permitted to proceed. *Id.* ¶ 6. Defendant answered the Amended Complaint on September 19, 2025. *Id.* ¶ 7. The Parties then commenced formal discovery, negotiated a protective order and ESI protocol, and propounded and responded to written discovery. *Id.* ¶ 8.

4

On June 17, 2026, the Parties participated in a full-day mediation before Mr. Bennett G. Picker of Stradley Ronon Stevens & Young, LLP, at which the Parties reached an agreement in principle. *Id.* ¶ 10. These negotiations were informed by the Parties' thorough factual and legal investigations, formal discovery, pre-mediation exchange of additional information and briefs, and the Parties' detailed analyses of the strengths and risks of each side's claims and defenses. *Id.* ¶ 11. In the weeks that followed, the Parties continued to negotiate and reduced the agreement in principle to a definitive Settlement Agreement, which has now been executed and is submitted herewith as **Exhibit 1**. *Id.* ¶ 12.

## A. Summary of the Settlement Terms

### 1. Settlement Class

The Settlement Class is defined as all persons residing in the United States whose information was disclosed to a third party between February 19, 2020 and July 22, 2026, through Tracking Technologies on Wellstar's Web Properties. S.A. ¶ 1.32. The Settlement Class excludes: (a) any Judge presiding over this Action, any members of the Judges' respective staffs, and immediate members of the Judge's family; (b) officers and directors of the Defendant, its agents, affiliates, subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest; (c) persons who timely and validly request exclusion from or opt out of the Settlement Class; (d) the legal representatives,

successors, or assigns of any such excluded persons; and (e) Class Counsel. *Id*. The Settlement Class is estimated to include approximately 870,000 individuals. *Id.* ¶ 1.33.

### 2. *Settlement Fund*

Wellstar has agreed to cause to have paid $4,250,000 into a non-reversionary common Settlement Fund. S.A. ¶ 1.35. The Settlement Fund will be used to pay: (a) reasonable Notice and Settlement Administration Costs incurred pursuant to this Settlement Agreement; (b) any taxes owed by the Settlement Fund; (c) any Service Awards approved by the Court; (d) any Attorneys' Fees and Expenses Award as approved by the Court; (e) *pro rata* cash payments to Settlement Class Members who submit a Valid Claim Form; and (f) any *cy pres* payment to an agreed upon and court-approved Cy Pres Recipient unaffiliated with the Parties. *Id.* ¶ 2.6.

### 3. *Settlement Class Member Benefits*

Settlement Class Members shall have the opportunity to submit a timely claim to receive a distribution from the Settlement Fund. Settlement Class Members may submit a claim, and the Settlement Administrator will make *pro rata* Settlement payments, the amount of which will be determined based on the amount in the Settlement Fund and the number of valid Claimants. S.A. ¶ 3.2. The Settlement Fund shall be distributed via *pro rata* cash payments to Settlement Class Members who submit a valid and timely Claim Form, after deducting the apportioned share of

Notice and Settlement Administration Costs as well as all Court-approved Service Awards and Attorneys' Fees and Expenses Award. *Id.* ¶ 3.1.

### 4. Release

In exchange for the relief described above, Settlement Class Members who do not timely and validly opt out will release claims that were brought or could have been brought in the Action arising out of or relating to Defendant's alleged use of the Tracking Technologies. S.A. ¶¶ 10.1-10.4. The release is tailored to the claims at issue and does not extend to unrelated claims. Joint Decl. ¶ 23.

### 5. Notice and Administration

Subject to the Court's approval, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), an administrator with extensive experience in class-action settlements, will serve as Settlement Administrator. Joint Decl. ¶¶ 24-28; *see also* Declaration of Cameron R. Azari, Esq. Regarding Notice Plan, attached hereto as **Exhibit 3**. Epiq has considerable experience in class action settlement notice and administration, including in data privacy class actions, and has been retained by the Parties to carry out the Notice program, claims administration, and all other tasks relating to settlement administration. *Id*. All fees, costs, and expenses relating to or arising out of the Notice plan and administering the Settlement shall be paid from the Settlement Fund. S.A. ¶ 2.6.

Direct notice will be provided by email or U.S. mail to all Settlement Class Members identified in the Class List. *Id.* ¶ 6.1(a). A Settlement Website, toll-free number, and post-office box will be established. *Id.* ¶ 6.1(b), (i). Epiq will also be responsible for accounting for the claims made and exclusions requested, determining validity of claims and eligibility of Settlement Class Members, and disbursing funds from the Settlement Fund to Settlement Class Members. *Id.* ¶ 6.1.

### 6. *Attorneys' Fees, Expenses, and Service Awards*

Class Counsel will apply for an award of attorneys' fees not to exceed one third of the Settlement Fund and reimbursement of reasonably incurred litigation expenses. S.A. ¶ 11.1. Class Counsel will also request Service Awards not to exceed $2,500 per Settlement Class Representative in recognition of the time and effort they expended in prosecuting this Action. *Id.* ¶ 11.2. These terms were negotiated only after the substantive terms of the Settlement had been agreed upon, and the Settlement is not contingent on the Court's approval of any particular fee, expense, or service-award amount. Joint Decl. ¶¶ 18, 33.

### 7. *Opt-Outs and Objections*

Settlement Class Members may exclude themselves from or object to the Settlement in accordance with the procedures set forth in the Settlement Agreement and Notice. S.A. ¶¶ 7.1-7.4, 8.1-8.7.

## IV.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), "[t]he claims… of a certified class… may be settled… only with the court's approval." Fed. R. Civ. P. 23(e). Approval typically proceeds in three stages: (1) preliminary approval of the proposed settlement; (2) dissemination of notice to the class; and (3) a fairness hearing at which the court determines whether the settlement is "fair, reasonable, and adequate" within the meaning of Rule 23(e)(2). *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021).

At the preliminary-approval stage, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." Manual, § 21.632. Preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (quotation omitted). There is a "strong judicial and public policy favoring the voluntary conciliation and settlement of complex class-action litigation." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Generally, a large amount of discretion is afforded to courts in approving class action settlements, and the Eleventh Circuit has held the "degree of deference to a decision approving a class action settlement makes

9

sense. Settlements resolve differences and bring parties together for a common resolution." *In re Equifax*, 999 F.3d at 1273. Preliminary approval is warranted here.

## V.    ARGUMENT

### A. The Court Should Preliminarily Certify the Settlement Class.

To certify a settlement class, Plaintiffs must satisfy each requirement of Rule 23(a) — numerosity, commonality, typicality, and adequacy — and one of the requirements of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Plaintiffs seek certification under Rule 23(b)(3), which requires that common questions predominate and that the class device is superior. Fed. R. Civ. P. 23(b)(3). Each requirement is satisfied here.

#### 1.  *Numerosity.*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 554 (N.D. Ga. 2007) (cleaned up). The joinder of approximately 870,000 Settlement Class Members would be impracticable, and numerosity is satisfied for this Settlement.

#### 2.  *Commonality.*

Rule 23(a)(2) is satisfied where class claims "depend upon a common contention" capable of classwide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564

10

U.S. 338, 350 (2011). For purposes of meeting the commonality requirement, even a single common question will do. *Id.* at 359. The commonality requirement is a "low hurdle." *Wilcopolski v. First Advantage Form I 9 Compliance, LLC*, 2025 WL 3520308, at *4 (N.D. Ga. May 19, 2025). As in most data privacy cases, "there are numerous common contentions capable of class wide resolution." *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 922 (N.D. Ill. 2022) (cleaned up); *see also Wilcopolski*, 2025 WL 3520308, at *4 ("Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied.") (collecting cases).

Here, for purposes of this Settlement, the commonality requirement is met because there are a number of common issues including whether Wellstar used Google and Meta Tracking Technologies to divulge its patients' Private Information for marketing and analytics and whether this caused the types of harms alleged. These questions turn on evidence concerning Wellstar's conduct that does not vary Class Member to Class Member. *See, e.g.*, *In re Grp. Health Plan Litig.*, No. 23-cv-00267-JWB-DJF (D. Minn. July 9, 2025) (granting final approval in pixel-tracking case); *In re Advocate Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 745 (E.D. Wis. 2024) (same).

### 3. Typicality.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims arise from the same information collection and sharing practices that gave rise to the claims of absent Class Members and are based on the same legal theories. Typicality is satisfied for this Settlement. *In re Equifax Inc. Customer Data Sec. Breach Litig.,* 2020 WL 256132, at *12 (N.D. Ga. Mar. 17, 2020), aff'd in part, rev'd in part and remanded, 999 F.3d 1247 (11th Cir. 2021) (typicality met where claims "are based on the same overarching legal theory that [defendant] failed in its common-law duty to protect their personal information").

### 4. Adequacy.

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class," which turns on whether representatives have conflicts with absent class members and whether class counsel are qualified. *Amchem*, 521 U.S. at 625–26; *Columbus Drywall*, 258 F.R.D. at 555. For purposes of this Settlement, Plaintiffs have no conflicts with the Settlement Class as their interests in obtaining meaningful relief for harms alleged in this Action are aligned with those of absent Class Members and they have actively participated in the litigation, including by reviewing pleadings, providing information and documents, and evaluating the proposed Settlement. Joint Decl. ¶¶ 29-33. Proposed Class

Counsel are highly experienced in data privacy class actions, have litigated this case over multiple years, and have committed substantial resources to prosecute the Action. *Id.* ¶¶ 38-71.

### 5. *Rule 23(b)(3) Is Satisfied.*

Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members" and that the class mechanism be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because this certification is for settlement only, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

### *a. Common Questions of Law and Fact Predominate.*

The core question: whether Wellstar improperly and unlawfully used its patients' Private Information for marketing, re-marketing, and analytics will be resolved on common, classwide evidence for this Settlement. *See, e.g.*, *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 694 (S.D. Fla. 2004) (holding "generalized evidence which proves or disproves an element on a simultaneous, class-wide basis" satisfies predominance) (citation omitted). Other courts have recognized that the types of common issues arising from similar unauthorized disclosures predominate over any individualized issues. *See, e.g.*, *In re: Grp. Health Plan Litig.*, No. 23-cv-00267-JWB-DJF (D. Minn. July 9, 2025); *In re TikTok, Inc.,*

13

*Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1086 (N.D. Ill. 2021) ("Predominance is met because many of the issues of law and fact common to members of the Nationwide Class and Illinois Subclass, respectively, may be resolved "through generalized proof"—namely, by examining Defendants' uniform data collection and privacy practices against their legal obligations."). Thus, the predominance requirement is satisfied.

### b. A Class is the Superior Method of Adjudicating this Case.

Superiority is also satisfied for this Settlement. The amounts at stake for individual Class Members are small relative to the cost and complexity of litigating causation questions that would require expert testimony and extensive document review. *See, e.g.*, *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010). A single class-wide settlement avoids inconsistent rulings, conserves judicial resources, and provides a realistic route to meaningful compensation for the Settlement Class.

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are complex, and the required expert testimony and document review are costly. The individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. *See, e.g.*, *Wilcopolski*, 2025 WL 3520308, at *6. Because class treatment is superior to

14

individual litigation, superiority is satisfied. Thus, the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

## B. The Proposed Settlement Warrants Preliminary Approval.

After it has been determined that certification of the Settlement Class is appropriate, the Court must determine whether the Settlement Agreement is worthy of preliminary approval and providing notice to the Class pursuant to the factors in Fed. R. Civ. P. 23(e)(2). Generally, preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (cleaned up).

The factors listed in Rule 23(e)(2) are complementary with the traditional factors set forth in *Bennett v. Behring Corporation*, 737 F.2d at 986. *See, e.g.*, *Ponzio v. Pinon*, 87 F.4th 487, 495 (11th Cir. 2023); *Goodman v. Columbus Reg'l Healthcare Sys.*, 2024 WL 2963441, at *3 (M.D. Ga. June 12, 2024) (evaluating settlement under Rule 23(e)(2) and *Bennett* factors). The *Bennett* factors include:

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall*, 258 F.R.D. at 558-59 (quoting *Bennett*, 737 F.2d at 986).

15

The Settlement readily satisfies Rule 23(e)(2) and the *Bennett* factors. It was negotiated at arm's length by experienced counsel after substantial litigation; it provides meaningful, carefully calibrated relief to the Settlement Class; it treats Class Members equitably; and it falls within the range of reasonable recoveries in comparable settlements. The Settlement here satisfies both frameworks for purposes of preliminary approval.

### 1.  Plaintiffs and Class Counsel Have Adequately Represented the Class.

The Rule 23(e)(2)(A) inquiry asks whether the Class Representatives and Class Counsel have adequately represented the Settlement Class throughout the litigation and settlement process. For the reasons set forth above, Plaintiffs and Proposed Class Counsel have prosecuted this Action diligently and effectively, culminating in an excellent result for the Settlement Class. Joint Decl. ¶¶ 3-12.

### 2.  The Settlement Was Negotiated at Arm's Length.

The Settlement is the product of hard-fought, arm's-length negotiations between experienced counsel with a full-day mediation guided by an experienced mediator, Mr. Bennett G. Picker of Stradley Ronon Stevens & Young, LLP, after the exchange of mediation briefs and extensive meet and confers over the course of the litigation. Joint Decl. ¶¶ 10-13. The Parties did not discuss Attorneys' Fees, Expenses, or Service Awards until the material substantive terms of the Settlement had been agreed upon. *Id*. ¶ 18. That is strong evidence the Settlement was not

16

collusive. *See, e.g.*, *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion."); *Cole v. Stateserv Med. of Fla., LLC*, 2018 WL 3860263, at *2 (M.D. Fla. June 19, 2018) (assistance of a mediator and negotiations between competent counsel "weigh[s] in favor of preliminarily approving" a settlement).

### 3. *The Relief Provided to the Class Is Adequate.*

Rule 23(e)(2)(C) directs the Court to consider (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief; (iii) the terms of any proposed attorneys' fee award; and (iv) any side agreements. Each consideration supports preliminary approval.

First, continued litigation would be costly, risky, and protracted. Defendant has contested liability at every stage, has denied that any Class Member suffered cognizable injury, and has preserved defenses such as the fact that class certification would be improper. Absent settlement, the Parties face years of continued motion practice, trial, and potential appeals. These risks are particularly pronounced in data privacy and tracking technology cases, which involve novel and rapidly evolving legal issues and have produced mixed results. *See, e.g.*, *Sims v. Univ. of Toledo Med. Ctr.*, 2024 WL 5410602 (Ohio Ct. Cl. Nov. 13, 2024) (dismissing analogous claims in their entirety). While Plaintiffs remain confident in the merits of their claims and

the propriety of class certification, they recognize the uncertainties inherent in this developing area of law and the defenses available to Defendant. The Settlement eliminates these risks and provides immediate, tangible benefits to Settlement Class Members. Accordingly, this factor weighs strongly in favor of approval.

Second, the distribution method is effective. Settlement Class Members may elect to receive a *pro rata* share of the Settlement Fund. Claims are submitted through a simple online or mail form supported by a dedicated Settlement Website and toll-free number, and electronic-payment options will be available. *See* S.A. ¶¶ 6.1-6.4. Moreover, the Settlement benefits here are comparable to results reached in other data privacy cases concerning the use of Tracking Technologies to collect private information. *See, e.g.*, *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 744 (E.D. Wis. 2024) (final approval granted for non-reversionary common fund settlement of $12.25 million for a class of approximately 2.5 million class members); *In re Novant Health, Inc.*, 2024 WL 3028443 (M.D.N.C. June 17, 2024) (final approval granted for non-reversionary common fund settlement of $6.66 million for a class of approximately 1,362,165 class members).

Third, the proposed attorneys' fee structure is consistent with Eleventh Circuit practice. Class Counsel will apply for fees of up to one third of the common fund, plus reimbursement for litigation costs incurred, an award that is on par with fees repeatedly found reasonable in comparable common-fund settlements. *See, e.g.*,

*Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5–6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide — roughly one-third."); *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *16 (N.D. Ala. July 17, 2012) (approving 35% fee award); *In re Checking Account Overdraft Litig.*, 2020 WL 4586398, at * 16 (S.D. Fla. Aug. 10, 2020) (awarding 35% fee award); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (awarding 35% fee award); *Sherwood v. Horizon Actuarial Servs., LLC*, 2023 WL 12214962 (N.D. Ga. Sept. 21, 2023) (preliminarily approving fee request of up to 33.33% of data-breach settlement fund). The fees requested are designed to compensate counsel for time dedicated to prosecuting this Action. The Fees, expenses, and Service Awards will be paid from the Settlement Fund, and the Settlement is not contingent on approval of any particular amount.

Fourth, there are no additional or side agreements implicating Rule 23(e)(2)(C)(iv) or Rule 23(e)(3). Joint Decl. ¶ 14.

### 4. *The Settlement Treats Class Members Equitably.*

Rule 23(e)(2)(D) asks whether the Settlement "treats class members equitably relative to each other." The Settlement does exactly that. All Settlement Class Members are eligible for the same benefits, and the Release is narrowly tailored to the claims pleaded in the Complaint and does not differentially burden any subset of

19

the Settlement Class. S.A. ¶¶ 3.1-3.2, 10.1-10.4; *see also In re Equifax*, 2020 WL 256132 (finding Rule 23(e)(2)(D) satisfied where all class members share claims arising from the same breach and are eligible to claim the same menu of benefits).

### 5. *The Bennett Factors Confirm That Preliminary Approval Is Appropriate.*

The *Bennett* factors reinforce the conclusion that the Settlement warrants preliminary approval.

*Likelihood of success and range of possible recovery.* The first three *Bennett* factors — the likelihood of success at trial, the range of possible recovery, and the point on or below that range at which settlement is fair — are typically considered together. *In re Equifax*, 999 F.3d at 1273–74. Data privacy cases present well-known risks on issues such as class certification. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574 (N.D. Cal. 2025) (granting class certification in part and denying it in part). Weighed against those risks, the $4,250,000 non-reversionary fund — a value of approximately $4.89 per Class Member before administrative and other deductions, and materially more on a per-claimant basis — falls well within the range of reasonable recoveries for a class of this size in a tracking software case. *See, e.g.*, *John, et al. v. Froedtert Health Inc.,* Cause No. 22023CV001935 (Circuit Court, State of Wisconsin) ($4.53 per Class Member); *In re Advocate Aurora Health Pixel Litigation,* No. 22-CV-1253 (E.D. Wis.) ($4.89 per Class Member); *Doe v.*

20

*Jefferson County Public Health District* No. 2, No. 24-2-00070-16 (Jefferson Cnty., Wash. Super. Ct. Dec. 5, 2025) (settlement with CyEx only).

**Complexity, expense, and duration.** Absent settlement, the Action would require completion of fact and expert discovery, motion practice on class certification, summary judgment, trial, and the near certainty of an appeal from any adverse judgment. Joint Decl. ¶ 37. That process would take years and consume significant resources on all sides. Pixel tracking cases present significant litigation risks. Due to the rapidly evolving state of the law, cases like this one face substantial hurdles at every stage. *See In re Novant Health, Inc.*, 2024 WL 3028443, at \*7 (M.D.N.C. June 17, 2024) (recognizing in an analogous case that the "law in this area is developing" and that "continuation of the litigation is expensive and risky for both parties"); *Wilcopolski*, 2025 WL 3520308, at \*7 (discussing risks in data breach cases).

**Opposition to the settlement.** Because Notice has not yet issued, opposition cannot be assessed. This factor, to the extent considered at preliminary approval, is neutral. *See Columbus Drywall*, 258 F.R.D. at 561 (deferring this factor pending notice).

**Stage of the proceedings.** The Settlement was reached after many months of hard-fought, arm's-length negotiations, including formal discovery, mediation briefs, and a full-day mediation with an experienced mediator. Proposed Class

Counsel have significant experience prosecuting privacy and data privacy consumer class actions and are well-informed of the legal claims at issue and the risks of this case. Joint Decl. ¶¶ 38-71 & Exs. A-C (firm resumes). Class Counsel had sufficient information to assess the strengths and risks of their claims before agreeing to settle.

**C. The Proposed Notice Program Satisfies Rule 23 and Due Process and Should Be Approved.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (citation omitted). The best practicable notice is that which is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice program meets those standards. Defendant will provide Epiq with a Class List containing the names, email addresses (when available), and mailing addresses of Class Members. S.A. ¶ 6.1(a). The primary form of notice shall be via electronic mail to the email address used by each Settlement Class Member on Defendant's Web Properties. *Id.* ¶ 6.1(d). If any Settlement Class Member does

22

not have an associated email address, notice shall be via U.S. Mail. *Id.* ¶ 6.1(e). The Notice directs recipients to the Settlement Website and toll-free number, summarizes the Settlement in plain language, and includes key deadlines. Returned mail will be re-mailed through advanced address-search processes.

A dedicated Settlement Website will include the following: (i) the Short Form Notice; (ii) the Long Form Notice; (iii) the Claim Form; (iv) the Preliminary Approval Order; (v) this Settlement Agreement; and (vi) any other materials agreed upon by the Parties or required by the Court. *Id.* ¶ 6.1(b). A toll-free telephone number and a post-office box will further enable Class Members to obtain information, submit claims, opt out, or object. *Id.*

The Long Form and Postcard Notices, substantially in the forms attached to the Settlement Agreement as Exhibits B and C, explain in plain language the nature of the Action, the definition of the Settlement Class, the benefits available, Class Members' rights and options (including the right to submit a claim, exclude themselves, object, or do nothing), the binding effect of the Release, and the date, time, and location of the Final Approval Hearing. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). Courts in this District have approved materially similar notice programs in data privacy settlements. *See, e.g.*, *Wilcopolski*, 2025 WL 3520308, at *8; *Sherwood*, 2023 WL 12214962, at *2–3; *see also In re LoanCare Data Sec. Breach Litig.*, 2025

23

WL 2604518, at *3 (M.D. Fla. Sept. 9, 2025). This Notice program should be approved.

### D. Proposed Class Counsel Should Be Appointed.

Rule 23(g) directs the Court to consider "the work counsel has done in identifying or investigating potential claims in the action," "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Proposed Class Counsel — David Almeida and Britany Wessan of Almeida Law Group LLC, Brandon Wise and Andrew Tate of Peiffer Wolf Carr Kane Conway & Wise, LLP, and C.J. Cuneo of Milberg LLC — have substantial experience prosecuting data-privacy class actions, investigated and litigated these claims, and committed the resources necessary to bring this Action to a successful resolution. *See* Joint Decl. ¶¶ 38-71 & Exs. A-C (firm resumes). Appointment under Rule 23(g) is therefore warranted.

### E. The Court Should Approve a Settlement Schedule and Set a Final Approval Hearing.

Plaintiffs respectfully request that the Court schedule a Final Approval Hearing at the Court's convenience no earlier than ninety (90) days after CAFA Notice is served, consistent with 28 U.S.C. § 1715(d). Plaintiffs request that the Court set a settlement schedule that would include, *inter alia*, deadlines for notice to

24

Settlement Class Members; for Settlement Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and for the filing of papers in support of final approval and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order. The Court will determine through the Final Approval Hearing whether the Settlement should be finally approved.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

Dated: July 22, 2026

Respectfully submitted,

*/s/ Britany A. Wessan*
Britany A. Wessan*
David S. Almeida*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
(708) 529-5418
britany@almeidalawgroup.com
david@almeidalawgroup.com

Andrew Tate
**PEIFFER WOLF CARR KANE CONWAY & WISE LLP**
235 Peachtree Street Nem Suite 400
Atlanta, GA 30303
(404) 282-4806
atate@peifferwolf.com

25

Brandon Wise
**PEIFFER WOLF CARR KANE
CONWAY & WISE LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
(314) 833-4827
bwise@peifferwolf.com

Carolyn Cuneo*
**MILBERG PLLC**
800 South Gay Street, Suite 1100
Knoxville, TN 37929
(866) 252-0878
cjcuneo@milberg.com

*Counsel for Plaintiffs and the Proposed Class*

\* Admitted *Pro Hac Vice*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing document was

prepared in Times New Roman 14-point font and complies with Local Rule 5.1C.

Dated: July 22, 2026        */s/ Britany A. Wessan*
              Britany A. Wessan